**Kevin A. HARDY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 126, 2008.**

Supreme Court of Delaware.

Submitted: Oct. 8, 2008.

Decided: Dec. 9, 2008.

---

37. 2007 WL 1653508, at *6.

James J. Haley, Jr., Ferrara, Haley & Collins, Wilmington, DE, for appellant.

Gregory E. Smith, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

STEELE, Chief Justice:

A Superior Court jury found defendant Kevin Hardy guilty of Rape First Degree, Unlawful Imprisonment First Degree, and Aggravated Menacing. Hardy appeals those convictions because he contends that the State engaged in prosecutorial misconduct. Hardy did not object to the alleged prosecutorial misconduct at trial. Hardy complains that the prosecutor improperly misstated evidence to attack his credibility, vouched for the State's case, and directed the jury to speculate about his criminal

background even though he had not testified.

### FACTS AND PROCEDURAL HISTORY

On December 27, 2006, Latannise Seymour went to a vacant house located at 520 North Monroe Street in Wilmington. She met Hardy at the vacant house. Seymour and Hardy had lived together at times, used heroin, and engaged in sexual relations in the past. On that day, Seymour, Hardy and some others shoplifted merchandise to support their drug habits.

After shoplifting and purchasing heroin, Seymour and Hardy returned to the vacant house. According to the State, Seymour and Hardy fought while using the drugs. During that fight, Hardy told Seymour to take off her clothes. When Seymour resisted, Hardy pulled her hair and screamed at her. After hours of fighting, Seymour and Hardy fell asleep before dawn. The next morning, someone knocked on their door and awakened them. Hardy and Seymour resumed fighting. Hardy threatened to beat and kill Seymour. Hardy hit Seymour with a metal pole on her thigh and buttocks. He then forced her to engage in vaginal intercourse. Hardy eventually permitted Seymour to leave the vacant house.

Seymour fled to her mother's house in New Castle. Seymour's mother noticed her daughter's bruises and took her to the City of Wilmington Police Department. On December 29, 2006, Seymour provided a statement to Detective Ronald Mullin, Jr. During that interview, Seymour claimed that Hardy raped her during the December 27, 2006 incident.

Seymour left the police station to go to a hospital. A Sexual Assault Nurse Examiner treated Seymour and took samples of genetic material for testing. According to her eventual trial testimony, the nurse noted during her treatment that Seymour had fresh bruises and scratches.

Following an investigation, the police arrested Hardy on January 18, 2007. During that arrest, Mullin asked Hardy if he had raped Seymour. According to Mullin, Hardy became hostile and denied raping Seymour.

At trial, Mullin testified that when he asked Hardy if he raped Seymour, Hardy "became hostile and denied it." At trial, neither the State nor Hardy asked Mullin more about that arrest interview. Hardy did not testify.

In his closing statement to the jury, the prosecutor made the following comments. The prosecutor discussed the interview between Hardy and Mullin as follows: "What did Kevin Hardy tell Detective Mullin? 'I didn't have sex with her. I never touched her.' Weigh that against 1 in 325 quintillion. There's a big credibility issue." The prosecutor reiterated this assertion by stating "But he never had sex with her." The prosecutor proclaimed, "He's a drug addict. How does he get by? How many bags does he do a day? How many times has he been shoplifting? How many times has he lied? And we know he had sex with her even though he lied to Detective Mullin and said he didn't." The prosecutor professed: "Now, are there falsely reported rapes? Yes, everyone knows that. Do they go to trial? No, because they're falsely reported and that usually falls apart real quick." Hardy did not object to these comments at trial.

On February 29, 2008, the jury found Hardy guilty of rape in the first degree, aggravated menacing, and unlawful imprisonment in the first degree.

On appeal, Hardy contends that the prosecutor's statements made in his final closing remarks constituted plain error. The State concedes that some of the prose-

cutor's statements were improper, but maintains that those statements do not amount to plain error.

## ANALYSIS

 Because Hardy did not object to the asserted prosecutorial misconduct at trial, we review the alleged misconduct for plain error under *Wainwright v. State*.[1] The plain error standard requires the error to be "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[2] We find plain error only for "material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[3]

Without doubt the prosecutor vouched for the State's case when he commented that falsely reported rapes do not go to trial. We have previously explained that the State commits prejudicial error when it vouches for its case:

> [T]his language was prejudicial because it infers that the State will not arrest someone until it is certain of his guilt and, accordingly, that destroys his presumption of innocence. The statements were prejudicial and inexcusable. They are patently removed from a permissible comment describing thorough, well-performed police work; instead, the statements imply that the police will not arrest someone until they know that he is guilty-and that is a glaring misrepresen-

tation. To condone such prosecutorial commentary is to condone the presumption of a defendant's guilt by the mere fact of his arrest. And that is error.[4]

Here, the prosecutor's statement went beyond a description of police work and the inference that police do not make an arrest until they are certain of guilt. Here, the prosecutor asserted in his closing that the State would not take "falsely reported rapes" to trial, leaving the jury with an unqualified inference that Seymour's version of the events presented in the State's case were valid and that Hardy falsely pleaded not guilty.

 The prosecutor in his closing "prejudicial[ly] and inexcusabl[y]"[5] vouched for the case he had brought. His assertion that the State did not take "falsely reported cases to trial" dramatically jeopardized the fairness and the integrity of the trial, because that statement eviscerated the presumption of Hardy's innocence by inferring guilt from the mere fact the State chose to prosecute him.[6] The Delaware Constitution recognizes the presumption of innocence as a fundamental right.[7] For the prosecutor to imply to the jury that he, and the State, prosecutes guilty people only, deprives Hardy of that fundamental right. Because this error requires reversal under *Wainwright*, we need not determine whether the prosecutor's vouching constituted "a persistent pattern of prosecutorial misconduct[,]" which "adversely affects the integrity of the judicial process."[8] We need not even address the

---

1. *Wainwright v. State*, 504 A.2d 1096 (Del. 1986).

2. *Id.* at 1100.

3. *Baker v. State*, 906 A.2d 139, 150 (Del.2006) (citing *Wainwright*, 504 A.2d at 1100).

4. *Hughes v. State*, 437 A.2d 559, 573 (Del. 1981).

5. *Id.*

6. *Id.*

7. Del. Const. art. I, § 7.

8. *Hunter v. State*, 815 A.2d 730, 737–38 (Del. 2002) (internal citation omitted). As stated in *Baker*, we apply the *Hunter* analysis in plain error reviews only if we conclude that the

other allegations of prosecutorial misconduct because we find the prosecutor's vouching to be so inexcusably egregious in light of the case law on prosecutorial vouching that no further analysis is required.

 Although the State's case, if believed, presented despicable facts, fundamentally unfair trials obscure a search for the truth. "[I]t is fundamental that [the prosecutor's] obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public." [9] The prosecutor represents the State, which includes even the defendant who is on trial.[10] Therefore, "[i]t is his duty to see that the State's case is presented with earnestness and vigor, but it is equally his duty to see that justice be done by giving defendant a fair and impartial trial." [11] We must conclude that the prosecutor failed to carry out that solemn duty in this case.

### CONCLUSION

The judgment of the Superior Court is reversed and this matter is remanded for a new trial.

---

misconduct did not warrant reversal under *Wainwright.* *Baker,* 906 A.2d at 150.

**9.** *Hooks v. State,* 416 A.2d 189, 204 (Del.1980) (internal citation omitted).

**10.** *Id.* (quoting *Bennett v. State,* 164 A.2d 442, 446 (Del.1960)).

