**Buckey KIRKLEY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 255, 2011.**

Supreme Court of Delaware.

Submitted: Feb. 22, 2012.

Decided: April 3, 2012.

---

14. Del.Code Ann. tit. 13, § 1103(a)(5) (2009).

Joseph M. Bernstein, Wilmington, Delaware for appellant.

Gregory E. Smith, Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice:

A Superior Court jury found Buckey Kirkley guilty of Attempted Robbery First Degree. Kirkley argues on appeal that statements in closing rebuttal argument, asserting that the State brought Attempted Robbery charges because that is exactly what Kirkley did, constitute improper vouching for the State's case. After a *de novo* review of the record, we find that the prosecutor engaged in misconduct which prejudicially affected Kirkley. Therefore, we REVERSE and REMAND.

## I. FACTUAL HISTORY

On February 21, 2010, Buckey Kirkley entered the Super Fresh supermarket in New Castle, Delaware around 8:30 am. He stood by a pay phone inside the store,

pretending to make a phone call. When there were no customers at cash register 2, Kirkley approached Jean Stepro, who was working at the register. He asked Stepro to exchange ten pennies for a dime, and she opened the register. When Stepro was about to hand him the dime, Kirkley said "Now give me all your money" and reached for the open drawer of the register.

Stepro quickly slammed the drawer shut, catching Kirkley's fingers in the crack. Kirkley drew his hand back in pain and made a second attempt to reach for the money which Stepro thwarted by closing the drawer. Unable to open the drawer himself, Kirkley reached into his waistband, possibly for a BB gun. Stepro backed away and yelled, which caused Kirkley to quickly look around and run out the door.

New Castle County Police officers John Mikus and Jennifer Bunora arrived at the Super Fresh soon after the assistant manager called 911. Dispatch gave the officers a description of a white male with a red goatee dressed in all black and armed with a handgun. Officer Bunora's Belgian shepherd partner picked up Kirkley's scent.[1] Together, they tracked the scent to Bellanca Lane in Collins Park.

Inside the driveway of 119 Bellanca Lane, police found a dark hooded sweatshirt and a black BB gun. Police found Kirkley in the home and took him back to the Super Fresh where Kirkley identified him, in part, by his goatee.

## II. PROCEDURAL HISTORY

On March 28, 2010, a New Castle County grand jury indicted Kirkley on the single count of Attempted Robbery First Degree. A two day trial began on February 15, 2011. In rebuttal closing argument, the prosecutor began by asking the jury to hold Kirkley accountable for Attempted Robbery.[2] Then the prosecutor said, "The State of Delaware is bringing this charge because it is exactly what Buckey Kirkley did." [3]

In the second paragraph of rebuttal, the prosecutor responded to defense counsel's argument that Kirkley is guilty of Theft not Robbery. He stated, "This is more than a theft, which is why, exactly why, the State of Delaware is bringing forth attempted robbery in the first degree." [4] Defense counsel objected immediately after the rebuttal:

> Your honor, I think there was an improper comment, where the State said this was a robbery, this is why the State brought these charges. I think that's vouching. That's different than saying the evidence sustains a robbery conviction. It's saying the State's already— the State's made a determination it's robbery and that's why we brought it. I see that as vouching.[5]

The trial judge found that the remark did not constitute vouching but also held that if the comment was improper, it would be cured by the pattern jury instruction.

> Your objection is noted. I will note that, in the jury instructions I'm going to read … I will instruct the jury that

---

**1.** Bunora used an air scenting technique where the dog picks his head off the ground because the cars are blowing the scent down the street and then back up the street. After crossing the street, the dog puts his nose down again because the air will blow the scent into the curbs. Trial Tr. 81, Feb. 15, 2011.

**2.** Trial Tr. 24, Feb. 16, 2011.

**3.** *Id.*

**4.** *Id.*

**5.** *Id.* at 26–27.

what an attorney personally believes or thinks about the evidence is not relevant. So, I think, for the relatively mild transgression, even if it was a transgression which I'm not finding, it's sufficiently cured by the pattern instruction.[6]

The jury found Kirkley guilty of Attempted Robbery in the First Degree. The State filed a motion to sentence Kirkley as a habitual offender, which the trial judge granted. On May 13, 2011, the trial judge sentenced Kirkley to 25 years at Level V.

### III. STANDARD OF REVIEW

■ The standard for reviewing prosecutorial misconduct claims depends on whether the issue was fairly presented below.[7] If defense counsel raised a timely objection to the conduct at trial, or if the trial judge considered the issue *sua sponte*, then the conduct is reviewed for harmless error.[8] Otherwise, the conduct is reviewed for plain error.[9]

■ Immediately after the prosecutor's rebuttal argument, defense counsel objected that some remarks constituted improper vouching. Because the defense raised a timely objection, the conduct will be reviewed for harmless error. The first step in a harmless error analysis involves a *de novo* review of the record to determine whether misconduct actually occurred.[10]

6. *Id.* at 28.

7. *Baker v. State*, 906 A.2d 139, 148 (Del.2006) (citing Supr. Ct. R. 8).

8. *Baker*, 906 A.2d at 148.

9. *Kurzmann v. State*, 903 A.2d 702, 709 (Del. 2006); *Morris v. State*, 795 A.2d 653, 657 (Del.2002) ("Because defense counsel did not object at trial to the prosecutor's statements and the Superior Court did not interview sua sponte, we review for plain error.").

10. *Baker*, 906 A.2d at 148.

11. *Id.*

### IV. ANALYSIS

■ When faced with a prosecutorial misconduct claim under a harmless error analysis, this Court first reviews the record *de novo* to determine whether the prosecutor's actions were improper. If we determine that no misconduct occurred, our analysis ends. If, however, the prosecutor engaged in misconduct, we then determine whether the misconduct prejudicially affected the defendant.[11]

■ To determine whether the misconduct prejudicially affected the defendant, we apply the three factors identified in *Hughes v. State*, which are: (1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error.[12] The *Hughes* factors are not conjunctive; for example, one factor may be determinative.[13] We apply the *Hughes* test in a contextual, factually specific manner.[14] If the *Hughes* test dictates that the misconduct warrants reversal, we do not reach the test established in *Hunter v. State*.[15]

### A. Asserting that the State brought the case because that is what Kirkley did is prosecutorial misconduct.

■ The prosecutor plays a special role in the adversarial system that is not

12. *Baker*, 906 A.2d at 149 (citing *Hughes v. State*, 437 A.2d 559, 571 (Del.1981)).

13. *Baker*, 906 A.2d at 149.

14. *Id.*

15. *Id.* (citing *Hunter v. State*, 815 A.2d 730, 738 (Del.2002) (requiring that we review the misconduct itself to determine if it is part of a pattern of prosecutorial misconduct; the repetition of which "adversely affects the integrity of the judicial process," and may warrant reversal.)).

limited to representing the State but also includes the responsibility as a minister of justice.[16] This responsibility demands that the prosecutor avoid improper suggestions, insinuations, and assertions of personal knowledge in order to ensure that guilt is decided only on the basis of sufficient evidence.[17] *Hardy v. State* held that the prosecutor commits misconduct when he vouches for the State's case.[18] In *Hughes v. State*, we explained that this type of vouching "was prejudicial because it infers that the State will not arrest someone until it is certain of his guilt and, accordingly, that destroys his presumption of innocence." [19]

 This Court has consistently reaffirmed that the prosecutor is allowed to argue all legitimate inferences of the defendant's guilt that follow from the evidence.[20] The inferences, however, must flow from the evidence presented. Conceptually, improper vouching occurs when the prosecutor implies personal superior knowledge, beyond what is logically inferred from the evidence at trial.[21]

 When deciding whether a comment constitutes prosecutorial misconduct, our cases often turn on the nuances of the language and the context in which the statements were made.[22] In this case, the prosecutor began his *closing rebuttal* argument with the following paragraph:

> Ladies and gentlemen of the jury, the State is asking you to hold him accountable for what he actually did, and that is an attempted robbery. You will be able to read the law and jury instructions in the indictment. **The State of Delaware is bringing this charge because it is exactly what Buckey Kirkley did.** This cannot be explained.[23]

 The highlighted sentence asserts that the State "is bringing" the charge of Attempted Robbery because Buckey Kirkley is guilty of Attempted Robbery in a case focused on whether Kirkley's actions constitute the crime of attempted robbery or the lesser included offense of theft. When a prosecutor implies that the State only bring claims when the defendant did what the indictment charges, the prosecutor vouches for the State's case. Another instance of misconduct can be found in the second paragraph of the State's rebuttal.

> An example of theft is that Detective Potts turns his back, or even if he's not in this room, and someone takes his notepad, that might be theft. Or, say, Buckey Kirkley is at a party, he likes someone's jacket and he knows it's someone's jacket so he takes it with the intention of keeping it. That's a theft. This is an attempted robbery. He's

**16.** Del. Lawyers' Rules of Prof'l Conduct R. 3.8 cmt. 1.

**17.** *Trump v. State*, 753 A.2d 963, 968 (Del. 2000).

**18.** *Hardy v. State*, 962 A.2d 244, 247 (Del. 2008).

**19.** *Hughes v. State*, 437 A.2d 559, 573 (Del. 1981) (holding that the prosecutor vouched for the State's case by emphasizing the careful and lengthy investigation before charging the defendant with first degree murder).

**20.** *Daniels v. State*, 859 A.2d 1008, 1011 (Del. 2004) (quoting *Hooks v. State*, 416 A.2d 189, 204 (Del.1980)); *see also Boatson v. State*, 457 A.2d 738, 742 (Del.1983).

**21.** *White v. State*, 816 A.2d 776, 779 (Del. 2003); *Flonnory v. State*, 893 A.2d 507, 539 (Del.2006) ("It is well-settled that prosecutors may not express their personal opinions or beliefs about the credibility of witnesses or about the truth of any testimony.").

**22.** *Kurzmann*, 903 A.2d at 710.

**23.** Trial Tr. 24, Feb. 16, 2011 (emphasis added).

grabbing at something, saying, "Give me all your money." He's flashing this. He's struggling with Jean Stepro. **This is more than a theft, which is why, exactly why, the State of Delaware is bringing forth attempted robbery in the first degree.**[24]

One could argue that the purpose of this paragraph is to show that Kirkley should not be found guilty of the lesser included offense of theft. While the facts in evidence may support this view in the mind of a reasonable juror, the final, inappropriate highlighted sentence's explanation of why the State brought the attempted robbery charge constituted misconduct. The prosecutor should have ended the paragraph with the strong and simple closing . . . [the evidence shows] "This is more than a theft." The rest of the sentence, claiming that the State only brings more serious charges when the defendant is guilty of the charge, is an improper inference that cannot be drawn from the evidence.

The prosecutor's statements in this case can be analogized to statements made in *Hardy v. State*, where the prosecutor vouched for his case by commenting that falsely reported rapes do not go to trial.[25] The *Hardy* statement implies that the prosecutor had personal superior knowledge that Hardy falsely pleaded not guilty.[26] Similarly, by claiming that the State brought the charge because Kirkley committed attempted robbery, the prosecutor implies he has personal knowledge that Kirkley is guilty. We also take note of the fact that Kirkley's Opening Brief relied primarily on *Hardy* while the

State's Answering Brief failed to cite or discuss the case.[27] Unsurprisingly, Kirkley's Reply Brief concludes: "The fact that *Hardy* is not even discussed by the State in its Brief suggests that the State has no real answer to the defense claim of prosecution misconduct."[28]

Finally, the reasoning in *Hughes v. State* can be applied to this case. In *Hughes*, the prosecutor emphasized that the State carefully investigated for 2 years before arresting the defendant for First Degree Murder as a way to bolster his case.[29] We held that "to condone such prosecutorial commentary is to condone the presumption of a defendant's guilt by the mere fact of his arrest."[30] Similarly, the statements in this case also erode the presumption of innocence by implying that the mere fact that the State charged Kirkley with a specific aggravated crime was evidence of guilt in a case where the defense contended innocence or at most guilt of the lesser included offense of theft.

The prosecutor's statements improperly vouched for the State's case. Asserting that the State brought the charges because Kirkley committed the crime implies personal knowledge outside the evidence and emasculates the constitutionally guaranteed presumption of innocence. Therefore, we find that the prosecutor engaged in misconduct.

## B. The prosecutorial misconduct prejudicially affected Kirkley.

 Having decided that the prosecutor made improper statements, we must

---

24. *Id.* (emphasis added).

25. *Hardy*, 962 A.2d at 247.

26. *Id.*

27. Opening Br. 13–14; Answering Br. 10–14.

28. Reply Br. 3.

29. *Hughes*, 437 A.2d at 573.

30. *Id.*; *Hughes* also demonstrates that vouching need not be related to a specific witness as vouching for the State's case can be equally improper and prejudicial.

next determine whether those statements prejudicially affected the defendant. Not every improper remark requires reversal.[31] Only comments that prejudicially affect the substantial rights of the defendant compromise the integrity and fairness of a trial.[32] In *Hughes v. State*, we adopted a three part test for determining the prejudicial effect of an improper statement: "The decisive factors are the closeness of the case, the centrality of the issue affected by the (alleged) error, and the steps taken to mitigate the effects of the error."[33] *Baker* reaffirmed the test with the further clarification that the test is applied in a fact intensive manner where one factor may outweigh the other two.[34]

This was a close case focused on the question of whether Kirkley committed the charged offense of Attempted Robbery or the lesser included offense Attempted Theft. As described by the trial judge, the jury must find that Kirkley "acted with the intent to prevent or overcome the resistance to the taking of the property or to the retention thereof immediately after the taking; or the defendant must have acted with the intent to compel the owner of the property or another person to deliver up the property."[35] The record demonstrates that Kirkley reached for the cash register twice. The first attempt resulted in Kirkley getting his fingers caught in the drawer as Stepro slammed it shut. Stepro thwarted the second attempted when she actually closed the drawer. Finally, as Kirkley reached into his waistband, Stepro yelled, which prompted Kirkley to look both ways and flee. It was not obvious, based on this factual record,[36] that Kirkley had formed the requisite intent to overcome resistance or compel delivery of the property. Because the State had the burden to prove either the element of intent to overcome resistance or to compel delivery beyond a reasonable doubt, this was a close case.[37]

Second, the misconduct affected the crux of the case—whether Kirkley committed Attempted Robbery. By vouching for the State's case by validating the charging process, the prosecutor's improper statement affected the ultimate question at trial by implying personal superior knowledge beyond the evidence he presented that could not be inferred from the evidence presented thereby adversely affecting the presumption of innocence. Therefore, this factor weighs in favor of a finding that the

---

31. *Daniels*, 859 A.2d at 1011.

32. *See Sexton v. State*, 397 A.2d 540, 544 (Del.1979); *Edwards v. State*, 320 A.2d 701 (Del.1974). *See also* Super. Ct.Crim. R. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

33. *Hughes*, 437 A.2d at 571 (Del.1981) (citing *Dyson v. United States*, 418 A.2d 127, 132 (D.C.1980)).

34. *Baker*, 906 A.2d at 149 (Del.2006) ("The factors in the *Hughes* test are not conjunctive and do not have the same impact in every case; for example, one factor may outweigh the other two. Moreover, we apply the test itself in a contextual, case-by-case, and fact sensitive manner.")

35. Trial Tr. 34, Feb. 16, 2011.

36. The factual record is taken from the testimony of 10 State witnesses: Nancy Kowalski (Super Fresh employee), Jean Stepro (Super Fresh cashier), Detective Gary Potts, Vivian Dillon (Super Fresh assistant manager), Danielle Williams (Super Fresh bookkeeper), Officer Jennifer Bunora (K–9 Unit), Officer John Mikus, Corporal Jason Russo, Detective William Chapman, and Corporal Gregory Spence.

37. The defense did not present any evidence or call any witnesses. Trial Tr. at 8, Feb. 16, 2011.

misconduct prejudicially affected the defendant.

Finally, we consider any steps taken to mitigate the effects of the error. Whenever this Court has found curative instructions effective, we have noted the speed with which the trial judge gave the instruction. In *Boatson v. State*, the defendant appealed on grounds that the prosecutor improperly introduced prejudicial statements that were neither in evidence nor made by the defendant.[38] We held that the prosecutor's remarks were improper but found no prejudice under *Hughes* because the trial judge's "immediate and thorough instruction to the jury that it could disregard the statement mitigated the effects of the comments."[39] *Edwards v. State* found that the prosecutor's question "Have you ever been with [defendant] when he raped a woman?" was reprehensible misconduct.[40] Nonetheless, we did not reverse because "the reaction of the Trial Judge was swift in an effort to negate any possible prejudice aroused in the jury's mind."[41]

Because defense counsel alertly objected to the prosecutorial misconduct immediately after closing rebuttal argument, the trial judge had a chance to respond. The trial judge noted the objection but declined to take any immediate curative measures. Instead, the trial judge held, "I will instruct the jury that what an attorney personally believes or thinks about the evidence is not relevant. So, I think, for the relatively mild transgression, even if it was a transgression which I'm not finding, it's sufficiently cured by the pattern instruction."[42] Later, the trial judge read the following as part of the jury instructions:

An attorney may draw all reasonable inferences from evidence in the record. However, it is not proper for an attorney to state his or her opinion as to the truth or falsity of any testimony, or evidence, or the guilt or innocence of an accused. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant; and you are instructed to disregard any personal opinion or belief concerning testimony or evidence which an attorney offers during opening or closing statements or at any other time during the course of the trial.[43]

*DeAngelis v. Harrison* demands that we find a pattern jury instruction ineffective for curing misconduct in closing arguments.[44] In *DeAngelis*, a civil case, defense counsel equated plaintiff's claim of damages to winning a lottery ticket. Despite an objection, "[t]he trial judge declined to give a specific instruction, noting that the comments of counsel were simply argument and the standard instruction to the jury not to treat the arguments of counsel as evidence would suffice."[45] This Court held that the comments were "clearly objectionable" and that the failure to provide a specific cautionary instruction created prejudice.[46] Therefore, "[i]n the absence of an immediate cautionary instruction, the refusal to grant a new trial

38. *Boatson v. State*, 457 A.2d 738, 742 (Del. 1983).

39. *Id.* at 743.

40. *Edwards v. State*, 320 A.2d 701, 703 (Del. 1974).

41. *Id.*

42. Trial Tr. 28, Feb. 16, 2011.

43. *Id.* at 30–31.

44. *DeAngelis v. Harrison*, 628 A.2d 77 (Del. 1993).

45. *Id.* at 79.

46. *Id.* at 80.

must be deemed an abuse of discretion."[47] The Kirkley pattern jury instruction failed to specifically address the source of the prejudice and even if it had, it was not sufficiently immediate to expunge the prejudicial impact of the prosecutor's statements. Just as the standard jury instruction failed to cure the objectionable misconduct in *DeAngelis*, we must hold that the Kirkley jury instruction failed to cure the prosecutorial misconduct.

This was a close case focused on whether Kirkley committed Attempted Robbery or Attempted Theft. The prosecutor's improper statement affected the central issue in this case and the pattern jury instruction had no meaningful curative effect. Therefore, applying the *Hughes* test, the prosecutor's misconduct prejudicially affected Kirkley. Because we conclude that the misconduct warrants reversal, we do not reach or apply the *Hunter* test.[48]

Finally, Kirkley brings a *Cooke v. State* claim.[49] He argues that defense counsel's statement "I'm asking you to find Mr. Kirkley guilty, guilty of attempted theft felony" conflicts with Kirkley's desire to pursue a not guilty because of involuntary intoxication defense.[50] As a result of our holding above, we need not reach the asserted *Cooke* issue.

### V. CONCLUSION

The judgment of the Superior Court is REVERSED and REMANDED for a new trial.

---

47. *Id.* at 81.

48. *Baker*, 906 A.2d at 149 ("The *Hunter* test only applies in an instance where the application of the *Hughes* test does not lead to reversal.").

49. *Cooke v. State*, 977 A.2d 803 (Del.2009).

50. Trial Tr. 19, Feb. 16, 2011.