IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MANUEL MORALES, | § | |
| | § | No. 119, 2015 |
| Defendant Below-Appellant, | § | |
| | § | Court Below: |
| v. | § | Superior Court of the |
| | § | State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below-Appellee. | § | Cr. I.D. No. 1309012678 |

Submitted: January 27, 2016
Decided: January 28, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

Bernard J. O'Donnell, Esquire, Office of Public Defender, Wilmington, Delaware for Appellant.

Karen V. Sullivan, Esquire, Department of Justice, Wilmington, Delaware for Appellee.


**VALIHURA**, Justice, for the Majority:

Pending before this Court is an appeal from Manuel Morales's ("Morales") conviction and sentence in the Superior Court. After a two-day trial, Morales was found not guilty of Offensive Touching, but guilty of Robbery First Degree. He was sentenced to ten years of incarceration at Level V, suspended after three years for decreasing levels of supervision. Seeking reversal of his conviction and sentence, Morales argues for the first time on appeal that the prosecutor's statement to the jury during summation that he was "clearly guilty" denied him a fair trial.

As set forth below, the prosecutor's improper comment did not amount to plain or repetitive error requiring reversal, and we, therefore, AFFIRM Morales's conviction and sentence.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On August 3, 2013, Morales entered a Metro PCS store on Kirkwood Highway in Elsmere, Delaware. While holding a pair of scissors, Morales approached Ruth Rodriguez ("Rodriguez"), the sole Metro PCS employee present in the store.[1] Morales jumped over the counter and demanded money, indicating that, if Rodriguez did not comply, he would kill her. When Rodriguez opened the register, Morales took money out of it. As he ran out of the store, Morales collided with Kelly Fossett ("Fossett"), who was entering the store through the front door. Fossett watched Morales run up a side street toward the rear of the building. The police arrested Morales over a month later, on September 20, 2013.

---

[1] Rodriguez stated that she was "98 percent to 100" percent certain that Morales held scissors.

On May 20 and 21, 2014, trial was held for Morales on charges of Robbery First Degree and Offensive Touching.[2] The case centered on identity evidence. Rodriguez and Fossett provided in-court identifications of Morales, based, in part, on their recognition of a tattoo on his neck.[3] Rodriguez and Fossett also testified regarding their separate pre-trial photo identifications of Morales. In addition, the jury viewed a video obtained from the store's surveillance camera. The video showed a tattoo in the shape of a skull on the robber's left arm that matched a tattoo on Morales's left arm. However, no physical evidence linked Morales to the robbery: a K-9 failed to track the perpetrator; the police did not recover the scissors, money, or items of clothing matching those worn by the robber; and Morales's fingerprints were not found at the store. The jury convicted Morales of Robbery First Degree.

## II.    ANALYSIS

### A.    *Contentions of the Parties*

On appeal, Morales argues that a statement by the prosecutor in her rebuttal closing argument was an impermissible expression of her personal belief that he was guilty. At trial, the prosecutor argued to the jury: "[t]he defendant is clearly guilty of robbery that happened that day. I ask you to return a verdict of guilty on both

---

[2] A grand jury charged Morales with Robbery First Degree and two counts of Offensive Touching. The State entered a *nolle prosequi* on one of the Offensive Touching counts and proceeded to trial on the Robbery First Degree count and only one count of Offensive Touching.

[3] After a colloquy with the trial court, and with permission from defense counsel, the State requested that Morales display his neck tattoo for the jury by having him stand alongside the jury box, in front of the prosecutor's table. Further, at trial, defense counsel noted several times that the pre-trial photo lineup included only one individual with a neck tattoo—Morales.

offen[s]es."[4]  The State responds that the comment was a proper argument based on the evidence.

### B.   *Standard and Scope of Review*

Because, at trial, Morales did not timely object to the prosecutor's statement and the trial judge did not intervene *sua sponte*, we review for plain error.[5]  "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record[;] which are basic, serious, and fundamental in their character[;] and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[6]

Plain error review of asserted prosecutorial misconduct requires a tripartite analysis.[7]  *First*, we examine the record *de novo* to determine whether misconduct occurred.[8]  If this Court finds no misconduct, the analysis ends.[9]  *Second*, we apply the standard articulated in *Wainwright v. State*[10] to determine whether any misconduct constituted plain error.[11]  To satisfy *Wainwright*, the defendant must show that "the error complained of [was] so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[12]  If this Court finds plain error under *Wainwright*, it must reverse without reaching the third step of the analysis.  *Third*, even if

---

[4] A13 (Tr. 32:3-6).
[5] *Baker v. State*, 906 A.2d 139, 150 (Del. 2006) ("Where defense counsel fails to raise a timely and pertinent objection to alleged prosecutorial misconduct at trial and the trial judge does not intervene *sua sponte*, we review only for plain error.") (citations omitted).
[6] *Id.* (citing *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).
[7] *See Spence v. State*, 2015 WL 7168159, at *9-10 (Del. Nov. 13, 2015).
[8] *Baker*, 906 A.2d at 150.
[9] *Id.*
[10] 504 A.2d 1096 (Del. 1986).
[11] *Baker*, 906 A.2d at 150.
[12] *Wainwright*, 504 A.2d at 1100 (citing *Dutton v. State*, 452 A.2d 127, 146 (Del. 1982)).

the misconduct does not require reversal under *Wainwright*, this Court may reverse under *Hunter v. State*[13] if it finds that "the prosecutor's statements are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process."[14]

### C. The Prosecutor's Statement to the Jury Did Not Deny Morales the Right to a Fair Trial

#### 1. The Prosecutor's "Clearly Guilty" Comment Was Improper

This Court has repeatedly held that it is improper for a prosecutor to express his or her personal belief or opinion as to the guilt of a defendant.[15]  Such comments, when made without qualification, risk denying a defendant's right to a fair trial by "emasculat[ing] the constitutionally guaranteed presumption of innocence."[16] Accordingly, improper remarks that "prejudicially affect[] substantial rights of the accused" ordinarily require reversal.[17]

The State argues that, without the prosecutor stating "I believe" or "I think," the prosecutor's statement cannot be transformed into an expression of the prosecutor's

---

[13] 815 A.2d 730 (Del. 2002).

[14] *Id.* at 733.

[15] *See, e.g.*, *Spence*, 2015 WL 7168159, at *12; *Kirkley v. State*, 41 A.3d 372, 378 (Del. 2012); *Brokenbrough v. State*, 522 A.2d 851, 858 (Del. 1987).

[16] *Kirkley*, 41 A.3d at 378.  *See also Holtzman v. State*, 1998 WL 666722, at *9 (Del. July 27, 1998) (discussing the defendant's right to a verdict decided "exclusively on the properly admissible evidence" and concluding that a prosecutor's statements expressing his personal belief that "[t]he defendant is guilty[,]" that the alleged victim was truthful in her testimony, and that the prosecutor could not "find a great deal of nice things to say about someone who [committed the alleged acts]" constituted plain error).

[17] *Brokenbrough*, 522 A.2d at 855 (citation omitted).  In *Brokenbrough*, this Court cited with approval *United States v. LeFevre*, 483 F.2d 477 (3rd Cir. 1973), and noted that "the Third Circuit and the ABA [Standards Relating to the Prosecution Function and the Defense Function] condemned expressions of personal opinion by prosecutors relating to credibility and guilt, even when it was clear that the comments of personal opinion by the prosecutor in his closing argument were based on the evidence." *Brokenbrough*, 522 A.2d at 859 (citation omitted).  The Third Circuit, in *LeFevre*, further observed that "such comments, if based on the evidence, are not reversible errors per se . . . ." *LeFevre*, 483 F.2d at 479.

4

opinion.[18]  But, as this Court recently concluded in *Spence v. State*,[19] a plain statement to the jury that a defendant is guilty is improper.[20]  In *Spence*, the prosecutor displayed a PowerPoint slide to the jury, which incorporated bold, italicized, and proportionately enlarged text that read:  "The defendant is guilty of all the charges against him."[21]  This Court held that the statement was improper, and that "the State should have included a qualifier before its statement, such as, for example, 'the evidence demonstrates.'"[22]

Here, the prosecutor stated the following to the jury during closing argument: "The defendant is *clearly guilty* of robbery that happened that day.  I ask you to return a verdict of guilty on both offen[s]es."[23]  These words were the last that the jury heard prior to receiving instructions from the trial judge and beginning their deliberations.[24]  As in *Spence*, the prosecutor here did not temper the statement with qualifying language.

---

[18] Use of the first person by a prosecutor is not a necessary predicate for a finding of improper expression of personal opinion as to the guilt or innocence of a defendant—mere implication or insinuation that the defendant is guilty will ordinarily suffice.  *See Berger v. U.S.*, 295 U.S. 78, 88 (1935) (observing that a prosecutor's "improper *suggestions*, *insinuations*, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none") (emphasis added); *Kirkley*, 41 A.3d at 376-77 ("The prosecutor plays a special role in the adversarial system that is not limited to representing the State but also includes the responsibility as a minister of justice.  This responsibility demands that the prosecutor avoid improper *suggestions*, *insinuations*, and assertions of personal knowledge in order to ensure that guilt is decided only on the basis of sufficient evidence.") (citations omitted) (emphasis added).

[19] 2015 WL 7168159 (Del. Nov. 13, 2015).  The current version of the ABA Prosecution Function provides:  "The prosecutor should not express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."  ABA Prosecution Function Standard 3-5.8(b) Argument to the Jury (1993).  Further, the ABA Prosecution Function sets forth:  "The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence."  *Id.* at 3-5.8(d).

[20] *Spence*, 2015 WL 7168159, at *12.

[21] *Id.* (emphasis removed).

[22] *Id.*

[23] A13 (Tr. 32:3-6) (emphasis added).

[24] *See* A13-14.

5

Accordingly, the statement was improper.[25] Like the United States Court of Appeals for the Third Circuit, we also "recognize the line between permissible and impermissible comment is a thin one, and precision of expression can be difficult."[26] Nevertheless, we continue to disapprove of expressions of personal opinion by prosecutors on credibility and guilt. In cases such as the instant one, however, our analysis does not end upon reaching a determination that a prosecutorial comment was improper.

### 2. *The Prosecutorial Misconduct Did Not Amount to Plain Error*

Under *Wainwright*, this Court will reverse if "the error complained of [was] so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[27] Stated otherwise, the error "must have affected the outcome of the trial."[28] In cases implicating improper vouching, "plain error is more likely to be found .

---

[25] Our sister courts have reached similar conclusions. For example, in *Pantano v. State*, 138 P.3d 477 (Nev. 2006), the Supreme Court of Nevada considered the following prosecutorial statement: "There's no doubt he's guilty. This is a parent's worst nightmare. Make them feel better. Thank you." *Id.* at 484. The State argued that the prosecutor made this statement after discussing the evidence. The Nevada Supreme Court observed: "Regardless of any logical or rhetorical connection that the State might wish to draw during closing argument, this type of comment is always improper. With regard to the statement, '[t]here's no doubt he's guilty,' the prosecutor improperly stated her personal opinion regarding [the defendant's] guilt." *Id.* (alterations in original and added) (citation omitted). A similar result was reached in *Commonwealth v. Torres*, 772 N.E.2d 1046 (Mass. 2002). There, the Supreme Judicial Court of Massachusetts concluded that the following prosecutorial statement was improper: "He's guilty as charged." *Id.* at 1051. The Supreme Judicial Court of Massachusetts concluded that the statement amounted to an "improper statement of personal belief." *Id.* (citation omitted). *See also Watters v. State*, 313 P.3d 243, 248 (Nev. 2013) ("The prosecution could not *orally* declare the defendant guilty in opening statement[s]. Doing so would amount to improper argument and the expression of personal opinion on the defendant's guilt, which is forbidden.") (emphasis in original) (citation omitted).

[26] *LeFevre*, 483 F.2d at 479.

[27] *Wainwright*, 504 A.2d at 1100 (citing *Dutton*, 452 A.2d at 146).

[28] *Keyser v. State*, 893 A.2d 956, 959 (Del. 2006) (citing *U.S. v. Olano*, 507 U.S. 725, 732-34 (1993); *Wainwright*, 504 A.2d at 1100).

. . where witness credibility is central [to] a 'close case,' and where the error is so egregious that the trial judge should have intervened *sua sponte* to correct it."[29]

Morales contends that the State's evidence against him was limited to two "quick and tense" eyewitness identifications, without any corroborating, physical evidence. The State did not brief the plain error analysis, relying instead on its argument that the statement was not prosecutorial misconduct.[30]

Because the evidence against Morales predominantly consisted of witness identifications, witness credibility was central to the case. Additional evidence corroborated the eyewitness testimony of Rodriguez and Fossett, such that the case was not close. Morales had two distinctive tattoos, including one on his neck that both witnesses described and that the jury viewed in person. Based on the robber's neck tattoo and the portion of the robber's face Rodriguez was able to view during the commission of the crime, Rodriguez identified Morales in a pre-trial photo lineup and in court. Fossett, who came face-to-face with Morales as he was running out of the store, also identified him as the robber in a pre-trial photo lineup and in court. These identifications were corroborated by a store surveillance video, which showed that the robber had a tattoo on his arm matching one on Morales's arm.

---

[29] *Whittle v. State*, 77 A.3d 239, 248 (Del. 2013) (citing *Clayton v. State*, 765 A.2d 940, 944 (Del. 2001)).

[30] Ans. Br. 10-11 ("Because there was no prosecutorial misconduct, the Court's analysis ends. There is no need to engage in an analysis under *Wainwright* (plain error) or *Hunter* (repetitive error that casts doubt on the integrity of the judicial process).").

In view of the evidence in favor of conviction, the prosecutor's "clearly guilty" statement was not so clearly prejudicial as to jeopardize the fairness and integrity of the trial process. Consequently, the misconduct does not satisfy the *Wainwright* standard.

Finally, we proceed by applying the third analytical step in the plain error analysis, the *Hunter* test. The prosecutorial misconduct here was isolated to one statement during summation, and did not constitute repetitive errors that require reversal.

### III. CONCLUSION

Although the prosecutor's statement during her rebuttal closing argument that "[t]he defendant is clearly guilty" was improper, it was neither plain error under *Wainwright* nor repetitive error requiring reversal under *Hunter*. Accordingly, we AFFIRM Morales's conviction and sentence.

**STRINE**, Chief Justice, Concurring:

I concur in the result reached in the Court's well-crafted opinion, with which I have one good faith and respectful difference of opinion. I write separately because I do not believe that the prosecutor's statement that "the defendant is clearly guilty" was improper at all, when fairly considered in full context. Even more, I do not see how the statement could be so plainly objectionable as to be a proper basis for plain error. Plain error should be, by definition, blatant, and such as to require a trial judge to intervene spontaneously even in the absence of an objection.

It is worth citing the passage in which this statement appeared:

> Kelly Fossett, on the other hand, just happened to be walking in, and wasn't under the stress of the situation. What she told you is she is absolutely certain that the person seated right there is the person who committed this robbery. The person who was leaving the Metro PCS after the robbery was committed.

> \* \* \*

> The tattoo was there, Ladies and gentlemen, because the defendant has a tattoo on his neck on a very visible place, on a place that was seen by the two witnesses in this case.

> \* \* \*

> We have our identifications, and 911 call and the video, but we shouldn't rely on that. We don't have anything else because we don't have scissors, or clothing, or any of that. Sergeant Shelton told you he tried to execute search warrants. He could not find a location where the defendant lived. He couldn't. Also told you that when he arrested him, it was on the 20th of September, six weeks later. So would you expect to find the defendant

9

carrying around these scissors and wearing the same clothing from a robbery that he committed six weeks before? Use your common sense.

Kelly Fossett, absolutely certain, photo lineups, both pick out the same person. Photo lineups told the person who did this is not necessarily in there. We also have tattoos on the arm. Sergeant Shelton told you [when] he viewed that video, he noticed a tattoo. That tattoo he also noticed when he arrested the defendant. Same tattoo.

Ladies and gentlemen, again I thank you. The defendant is clearly guilty of robbery that happened that day. I ask you to return a verdict of guilty on both offenses. Thank you.[31]

As can be seen, the defendant did not object to the prosecutor's statement. And although we have cautioned prosecutors to avoid the first person to the extent possible,[32] human beings can make lapses. Plain error is a purposely difficult standard to meet and requires that "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[33] I do not believe Morales has met it here. For reasons I will explain, it is difficult for me to understand that we would expect a trial judge to act on the basis of such an isolated, innocuous statement given its clear contextual relation to a recitation of the evidence.

For starters, in real time, even more than on paper, the isolated statement would likely have been heard as referring directly to the evidence the prosecutor just

---

[31] App. to Opening Br. at 13.
[32] *See, e.g.*, *Brokenbrough v. State*, 522 A.2d 851, 859 (Del. 1987) ("We do not adopt a rule which says that the use of the word 'I' or 'we' in a closing argument is *per se* improper. . . . There is a great difference in 'leaving' a point before the jury and 'suggesting' it personally. Nevertheless, arguments in the first person are extremely dangerous and should be assiduously avoided.").
[33] *Williams v. State*, 98 A.3d 917, 920 (Del. 2014) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)) (internal quotation marks omitted).

summarized. Therefore, it is difficult to see why a judge would decide to intervene. As important, because of those realities and the quick and isolated nature of the statement, a trial judge could assume the defense made a reasoned decision not to object. As this Court said in *Trump v. State*:

> [W]hen a defendant does not object to language used in a closing argument, the appellate court can easily assume that the defendant is satisfied that there is no prejudice because inaction on the part of the defense counsel may lead to a conclusion by the appellate court that the attorney made a tactical decision to waive objection. Moreover, when the trial court, closer to the scene of the trial and with the benefit of the 'feel' for the trial, does not intervene to declare a mistrial or give a curative instruction, a deferential appellate court is reluctant to vacate a conviction that is supported by substantial evidence. [34]

Of course, had the defendant objected, the trial court might well have instructed counsel to rephrase the statement, and she should and likely would have said: "I am sorry your honor, I meant to say that based on this evidence, the State submits that there is clear evidence of the defendant's guilt and asks for you to reach a verdict in its favor." That would have been more than sufficient and not any different in substance, because the prosecutor's statement did not imply that she had "personal superior knowledge, beyond what is logically inferred from the evidence at trial."[35] But, there was no objection.

---

[34] *Trump v. State*, 753 A.2d 963, 967–68 (Del. 2000) (quoting Robert W. Clifford, *Identifying and Preventing Improper Prosecutorial Comment in Closing Argument*, 51 MAINE L. REV. 242, 257–58 (1999)) (internal quotation marks omitted).
[35] *Kirkley v. State*, 41 A.3d 372, 377 (Del. 2012).

11

And to repeat, here, the prosecutor's statement that the defendant was "clearly guilty" directly followed her thorough summary of the evidence.[36] In fact, the prosecutor did not even use the "I" word.[37] As this Court held in *Mills v. State*, "in a closing argument, prosecutors are 'allowed and expected' to make and explain inferences from the evidence that support the prosecution's theory that the defendant is guilty."[38] Given the statement's proximity to the prosecutor's summary of the evidence, the statement "flow[ed] from the evidence presented" and was not improper vouching.[39]

---

[36] *See* CHARLES E. TORCIA, WHARTON'S CRIMINAL PROCEDURE § 451, at 1021–26 (13th ed. 1991) ("[I]f the prosecutor's belief appears to be a mere deduction from the evidence introduced at the trial, the statement is not improper, the theory being that the prosecutor is allowed in argument to assist the jury in analyzing, evaluating, and applying the evidence by drawing appropriate deductions therefrom."); BARBARA E. BERGMAN & NANCY HOLLANDER, WHARTON'S CRIMINAL EVIDENCE § 4.3, at 283 (15th ed. 1997) ("If the argument is a fair discussion of the evidence actually admitted during the course of the trial and the reasonable inferences from that evidence, it is based on relevant evidence and is permissible.").

[37] *See Burns v. State*, 76 A.3d 780, 790 (Del. 2013) (explaining that the prosecutor, who said "he did this," did not use the word "I" and "did not imply that she had superior personal knowledge," but rather made "a logical inference that could have been made based on the evidence").

[38] *Mills v. State*, 2007 WL 4245464, at *3 (Del. Dec. 3, 2007) (quoting *Booze v. State*, 2007 WL 445969, at *4 (Del. Feb. 13, 2007)); *see also Kirkley*, 41 A.3d at 377 ("This Court has consistently reaffirmed that the prosecutor is allowed to argue all legitimate inferences of the defendant's guilt that follow from the evidence.").

[39] *Id.* The Majority Opinion notes that in a recent case, *Spence v. State*, a slide that contained the words "[t]he defendant is guilty of all charges against him" was found to be objectionable. 2015 WL 7168159, at *12 (Del. Nov. 13, 2015). As is clear from the learned decision in that case, the focus of that decision was on the problems presented by a detailed PowerPoint presentation to the jury. These are different from oral statements in closing arguments for a few reasons, and one of them is that they are obviously not spontaneous. As or more important, the PowerPoint presentation in that case contained a number of highly inflammatory slides that were not appropriately tailored to record evidence (*e.g.*, emphasizing the word "murder" using large, red lettering and placing it next to an image of the decedent's body). *Id.* at 4. The statement like the one here was part and parcel of the presentation and therefore would be read to be premised on the improper statements. Here, the statement in issue is preceded by nothing improper at all, and in context and real time, most logically relates to the recitation of the record evidence that preceded it.

12

And there is another important consideration in evaluating the statement at issue here. A jury knows in every case that the prosecutor subjectively believes the defendant to be guilty.[40] In fact, as an ethical matter, it is critical that the State and its prosecutor believe they are prosecuting a guilty defendant.[41] An isolated statement of the kind at issue here therefore poses no danger that the jury is being told to believe the police or the prosecutor personally over the other evidence. Nor does it pose a danger that there is some basis for conviction other than the evidence which the prosecutor recited just the moment before.

I agree, of course, with the Majority that there is no prejudice. But, the reason I believe that no prejudice can be found is that the statement was not an improper comment. Had the statement implied that the State had evidence of guilt it could not

---

[40] *See* WAYNE R. LAFAVE, ET AL., 4 CRIM. PROC. § 13.1(b) n.34.2 (3d ed. 2014) (explaining the "common assumption" that the prosecutor can proceed only when she believes that the defendant is guilty); Sarah Anne Mourer, *Believe It or Not: Mitigating the Negative Effects Personal Bias and Belief Have on the Criminal Justice System*, 43 HOFSTRA L. REV. 1087, 1096 (2015) (noting that "it is clear that the prosecutor must believe that the defendant is guilty to proceed to trial"); Alafair S. Burke, *Talking About Prosecutors*, 31 CARDOZO L. REV. 2119, 2134–35 (2010) ("Because the prosecutor believes that the defendant is guilty, she is likely to weigh the evidence against him as strong.").

[41] *See* Alafair S. Burke, *Prosecutorial Agnosticism*, 8 OHIO ST. J. CRIM. L. 79, 79 (2010) ("Most legal ethicists maintain that an ethical prosecutor should not pursue criminal charges against a defendant only if the prosecutor personally believes that the defendant is guilty."); Bruce A. Green, *Why Should Prosecutors "Seek Justice"?*, 26 FORDHAM URB. L.J. 607, 640–41(1999) ("Prosecutors have the power, freedom and responsibility to make decisions for the sovereign in the criminal context. . . . They must satisfy themselves of an individual's guilt as a precondition to determining that the conviction of an individual is an end to be sought on behalf of the state or the federal government."); Bennett L. Gershman, *A Moral Standard for the Prosecutor's Exercise of the Charging Decision*, 20 FORDHAM URB. L.J. 513, 522 (1993) ("[B]efore making the ultimate decision to charge, the prosecutor should then assure herself that she is morally certain that the defendant is both factually and legally guilty . . . . Finally, the prosecutor who acknowledges moral uncertainty about a defendant's guilty but decides nonetheless to bring charges, violates the prosecutor's special obligation to seek justice, and tacitly invites the system to miscarry.").

present (*e.g.*, insinuating to a jury exposed to police procedurals on television that Warren-era constitutional holdings such as *Miranda* somehow kept out additional evidence of the defendant's guilt in the State's possession), it is likely that the Majority would have found prejudice. Likewise, had the statement suggested that certain witnesses should be given more credence because they, for example, are police officers, it is likely that the Majority would have found prejudice. Precisely because the statement does not in any way encourage the jury to evaluate the case on any basis other than proper record evidence, it poses no threat of prejudice. For the same reason, I am unable to see how the statement, taken alone, can be deemed prosecutorial misconduct, much less of a plain kind.[42] I do not support holding either prosecutors or trial judges to a standard of human perfection that I know I myself fall far short of meeting.

---

[42] It is easy to lose sight of what the words "plain error" mean. Plain error requires a flaw in the trial process so patent that a judge must intervene without an objection. *See Swan v. State*, 820 A.2d 342, 356 (Del. 2003) ("Improper prosecutorial comments in closing argument only constitute plain error if . . . the comment is so clearly prejudicial that defense counsel's failure to object is inexcusable and the trial judge must intervene *sua sponte* in the interest of fundamental fairness.").