**James MALLOY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: April 25, 1983.

Decided: June 29, 1983.

Revised: July 8, 1983.

---

Upon appeal from Superior Court in and for Sussex County. Affirmed.

John H. Cordrey, Ridgely & Ridgely, Georgetown, for appellant.

Gary A. Myers, Deputy Atty. Gen., Georgetown, for appellee.

Before McNEILLY, HORSEY and MOORE, JJ.

MOORE, Justice:

Following a non-jury trial in Superior Court, James Malloy appeals his convictions of possession of hashish with intent to deliver (16 *Del.C.* § 4752) and possession of marijuana [16 *Del.C.* § 4754(b) ].[1] He contends that probable cause did not exist for the police to stop his car and conduct the search which led to discovery of a large quantity of drugs. Moreover, Malloy argues that despite the amount of drugs found in his vehicle, this cannot serve as a predicate for his conviction of possession with an intent to deliver. Finally, and as an apparent afterthought, he suggests that the grand jury's indictment was defective in its failure to repeat within the body of one count the introductory statements of the indictment that Malloy was charged with "intent to deliver" hashish. We have reviewed each of these contentions, find them without merit, and affirm.

## I.

While driving south on U.S. 13 near Bridgeville during the early morning hours of December 4, 1981, two state policemen, assigned to the "drunk driver detail," observed Malloy leave a tavern and enter a Chevrolet parked nearby. The officers watched as the car made a wide turn into the northbound lanes. Following at a distance of about 200 feet, they could not see the light over the car's rear license plate, and presumed it was out. In addition they saw the Chevrolet weave across lanes and

---

1. The statutes provide:
 16 *Del.C.* § 4752.
 Except as authorized by this chapter, any person who manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance or a counterfeit controlled substance classified in Schedule I, II, III, IV or V which is not a narcotic drug is guilty of a felony and upon conviction shall be fined not less than $1,000 nor more than $10,000 and imprisoned not more than 10 years.

 16 *Del.C.* § 4754(b).
 (b) It is unlawful for any person knowingly or intentionally to possess, use or consume any Schedule I controlled substance or counterfeit substance classified in § 4714(e) of this title, except as otherwise authorized by this chapter. Any person who violates this subsection, upon conviction, shall be fined not more than $500, be imprisoned not more than 2 years or both.

within its own lane for 1½ miles. The policemen stopped Malloy's car for further investigation, and found that the light over the license plate did work. Moreover, Malloy, the car's driver, evidently was not intoxicated. Ruling on Malloy's motion to suppress, the trial judge concluded that the police had probable cause to stop the car in order to investigate the apparent equipment failure and to determine if Malloy was intoxicated. Malloy contends that this was error.

■ Before stopping Malloy's car, the police had to have a particularized and objective basis for suspecting that he was violating the traffic laws. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The officers had seen Malloy leave a roadside tavern on a major highway, enter a car, and drive away, making a wide turn onto the road. Following the vehicle, they noticed the car being driven erratically. Based on all of these facts (*Cortez,* 449 U.S. at 417, 101 S.Ct. at 694), the investigatory stop was justified. *See also Warren v. State,* Del. Supr., 385 A.2d 137, 139–40 (1978) (like facts constitute probable cause to arrest a defendant for driving while intoxicated); *State v. Moore,* Del.Super., 307 A.2d 548, 549 (1973) (same). Similarly, upon reasonable cause the police could stop Malloy's car to investigate the possible equipment defect. 21 *Del.C.* § 2144(a). *See Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401. Though the rear license plate must only be illuminated in a way as to "render it *clearly legible* from a distance of 50 feet to the rear," [21 *Del.C.* § 4334(c), emphasis added], from their inability to even see the plate at a distance of 75 feet, the police reasonably could infer that the light did not work.

After stopping the car, one officer approached it to talk to Malloy. The other trooper, who was still in the police car, saw the right rear door of Malloy's vehicle open, a man toss a package under the car, and the door close again. Retrieving the discarded item, the officer found that it contained a large block of hashish and two smaller bags of this drug. They promptly arrested the man who threw the hashish out of the car, and searched the automobile for weapons and additional drugs. Small bags of marijuana were found in Malloy's coat, which was on the back seat, and under the driver's seat. Malloy contends that this search exceeded the need to secure the officers' safety, and was not one incident to his arrest (which occurred after the search).

■ "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Even if the other occupants of the car were not subject to arrest, the arrest of the man who threw the hashish out of the car justified the search of the passenger compartment. Nothing in *Belton* suggests that it is premised solely on the arrest of the driver. In addition, the search of Malloy's coat and the paper bag was permissible under *Belton. Id. See Traylor v. State,* Del.Supr., 458 A.2d 1170, 1174 (1983) (gloves on front seat of car).

## II.

■ Next, Malloy argues that there is no direct evidence, and insufficient circumstantial evidence, to show that he intended to deliver the hashish as charged. He correctly points out that, in and of themselves, quantity and possession do not necessarily prove one's intent to deliver drugs to a third person. *See Wilson v. State,* Del. Supr., 343 A.2d 613, 618 (1975) [quoting *Perry v. State,* Del.Supr., 303 A.2d 658, 659 (1973)] (intent to sell). *See also Redden v. State,* Del.Supr., 281 A.2d 490 (1971) (quantity is insufficient to establish intent to sell). However, the amount of hashish possessed by Malloy was not the sole evidence upon which the trial judge based his verdict. Instead, the State presented expert testimony to establish that the batch of

hashish found was more than that usually held for personal use. *See Perry,* 303 A.2d at 659; *Farren v. State,* Del.Supr., 285 A.2d 411, 411 (1971). Furthermore, a co-defendant testified that the drugs were for distribution by her at a party. The judge also could consider the various arrangements made by Malloy, prior to his arrest, for the purchase of the hashish. Thus, it was entirely proper to infer Malloy's intent from the totality of circumstances found in this record. 11 *Del.C.* § 307.[2] *See generally Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### III.

Finally, we address Malloy's belated challenge to the sufficiency of the indictment. As returned by the grand jury, the introductory language of the indictment clearly put Malloy on notice of the charge against him:

"The grand jury charges . . . James Malloy with the following offenses, to wit:

\* \* \* \* \* \*

COUNT 2 a felony, POSSESSION OF HASHISH WITH INTENT TO DELIVER, In violation of Title 16, Section 4752 of the Delaware Code . . ."

However, Malloy complains that the specification of Count 2 omitted reference to any "intent to deliver". It reads:

COUNT 2—POSSESSION OF HASHISH WITH INTENT TO DELIVER S81–12–0048, S81–12–0065 & S81–12–0062

DANETTE V. SANDERS, ZACHARY C. SPENCE, and JAMES MALLOY on or about the 4th day of December, 1981, in the County of Sussex, State of Delaware, did, on U.S. Route # 13, approximately three-tenths (.3) of a mile east of the Town of Bridgeville, Delaware, then and there feloniously, knowingly and unlawfully have in their possession a non-narcotic Schedule I controlled substance, to-wit: Hashish.

According to Malloy, Superior Court Criminal Rule 7(c), which parallels the similar federal rule, requires the indictment to "be a plain, concise and definite written statement of the essential facts constituting the offense charged". Because an intent to deliver the subject drugs is a necessary element of 16 *Del.C.* § 4752, he contends that the absence of such an allegation renders the indictment defective under Rule 7(c).

■■■■ The courts of this State have consistently viewed an indictment as performing two functions: to put the accused on full notice of what he is called upon to defend, and to effectively preclude subsequent prosecution for the same offense. *E.g., State v. Lasby,* Del.Super., 174 A.2d 323, 324 (1961), *aff'd,* Del.Supr., 185 A.2d 271 (1962); *State v. Minnick,* Del.Super., 168 A.2d 93, 95 (1960); *State v. Martin,* Del.Super., 163 A.2d 256, 258 (1960); *State v. Blendt,* Del.Super., 120 A.2d 321, 323 (1956). These purposes are fulfilled if the indictment, as required by Rule 7(c), contains a plain statement of the elements or essential facts of the crime. *See State v. Allen,* Del.Super., 112 A.2d 40 (1955). Malloy made no pre-trial objection to the indictment. Instead, his challenge arose by motion for judgment of acquittal under Superior Court Criminal Rule 29(a) at the end of

---

**2.** 11 *Del.C.* § 307 provides:

(a) The defendant's intention, recklessness, knowledge or belief at the time of the offense for which he is charged may be inferred by the jury from the circumstances surrounding the act he is alleged to have done. In making the inference permitted by this section, the jury may consider whether a reasonable man in the defendant's circumstances at the time of the offense would have had or lacked the requisite intention, recklessness, knowledge or belief.

(b) When the defendant's intention, recklessness, knowledge or belief is an element of an offense, it is sufficient to establish a prima facie case for the State to prove circumstances surrounding the act which the defendant is alleged to have done from which a reasonable juror might infer that the defendant's intention, recklessness, knowledge or belief was of the sort required for commission of the offense.

the prosecution's case-in-chief.[3] "Such a long delay in raising the issue suggests a purely tactical motivation of incorporating a convenient ground of appeal in the event the jury verdict went against the [defendant]. Furthermore, the fact of the delay tends to negate the possibility of prejudice in the preparation of the defense." *United States v. Pheaster,* 544 F.2d 353, 361 (9th Cir.1976). Thus, Malloy's claim that the indictment was defective will be unavailing unless the indictment cannot, by the most liberal construction, be said to have imparted notice to him. *United States v. Hart,* 640 F.2d 856, 857–58 (6th Cir.1981); *Pheaster,* 544 F.2d at 361. *See also United States v. Thompson,* 356 F.2d 216 (2d Cir.1965).

The State suggests that by failing to raise this issue before trial, Malloy has waived any objection to the indictment. Super.Ct.Crim.R. 12(b)(2). *See* Supr.Ct.R. 8.[4] Certainly, Malloy's use of a motion for judgment of acquittal is a questionable application of Criminal Rule 29. *See State v. Crawford,* Del.Super., 297 A.2d 55 (1972). Indeed, it is no substitute for a pre-trial challenge to the indictment. Even if the State is correct, Malloy has presented a claim which is important to the proper administration of criminal justice in this State, and we address it only to bring some quality, order and uniformity to the craft of drafting indictments—a circumstance which the State has candidly informed us does not now prevail.

Prior to trial, Malloy did not contend that the indictment was ambiguous. In fact, he pled not guilty to the indictment under Superior Court Criminal Rule 10(b), and thus declared that he and his attorney had read the indictment and understood the nature of the accusations against him. *See* Super.Ct.Crim.R. 10(b)(1).[5] He also expressed no surprise at trial that the State's evidence was directed to the crime of possession with intent to deliver hashish. Furthermore, the introduction to the indictment contained the official citation to the statute and the name of the offense (i.e., possession of hashish with intent to deliver), and the heading of Count II also identified the crime charged. On the basis of these facts, we conclude that Count II was sufficient to give Malloy notice of the offense and the allegations of the State, thus allowing him to prepare his defense. *Holland v. State,* Del.Supr., 194 A.2d 698 (1963).

**3.** Superior Court Criminal Rule 29(a) provides:

(a) Motion Before Submission to Jury. Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The Court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

**4.** Super.Ct.Crim.R. 12(b)(2) provides:

Defenses and Objections Which Must Be Raised. Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the Court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the Court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the Court at any time during the pendency of the proceeding.

Supr.Ct.R. 8 provides:

Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.

**5.** Super.Ct.Crim.R. 10(b)(1) provides:

(b) Arraignment by Prior Pleading. An arraignment in open Court shall not be required when, within two days prior to the scheduled arraignment, there shall have been served and filed a response to the indictment or information setting forth the following: (1) an acknowledgment that the defendant and his attorney have read the indictment or information and that the defendant understands the nature of the accusations made against him, ...

Malloy also argues that under article I, section 8 of the Delaware Constitution,[6] he is entitled to a determination by the grand jury that there were sufficient facts to believe an offense was committed and that he was the perpetrator. According to him, the lack of an allegation in Count II that he intended to deliver the hashish implies that the grand jury could not have found facts constituting a violation of 16 *Del.C.* § 4752. So the argument goes, he was tried and convicted of a crime for which the grand jury could find no evidence upon which to indict him.

 There is a strong presumption that the grand jury has faithfully performed its duty in returning an indictment, and a defendant bears the heavy burden of overcoming it. *E.g., Hamling v. United States,* 418 U.S. 87, 139 n. 23, 94 S.Ct. 2887, 2918, n. 23, 41 L.Ed.2d 590 (1974); 1 C. Wright, *Federal Practice & Procedure: Criminal* § 111, at 307 (2d ed. 1982). Merely pointing to an omission, probably caused by prosecutorial negligence, does not satisfy that burden.

 Though Criminal Rule 7(c) eliminates many of the complex common law requirements for preparing an indictment, good and careful draftsmanship is still important. *Minnick,* 168 A.2d at 95–96. It is clear beyond peradventure that Count II, though sufficient to charge an offense, was inartfully drawn. When undertaking to draft an indictment, counsel for the State should turn to the statute defining the crime, and, with the words of the General Assembly before him, write a count that does not omit allegations of an essential element of the offense. Failure to do so is negligence which saves little time in the preparation of an indictment, but requires the needless expenditure of time and effort by counsel, the parties, and the courts. A few moments dedicated to comparing the specification of Count 2, as written here, to

the statute would have avoided this controversy entirely.

At oral argument, counsel for the State advised us that the practice of drawing indictments varies across the State. This seemingly inconsistent approach to a crucial step in the criminal justice system, especially in light of the waste of legal resources that occurs when an indictment must be dismissed because of sloppy drafting, should not continue. The Court strongly commends to the Attorney General a review of the internal practices and procedures employed in the preparation of indictments and informations, with particular attention to quality and uniformity of draftsmanship.

AFFIRMED.

**6.** The relevant portion of that section reads, "No person shall for any indictable offense be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. . . . "