# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ID No. 2002011676** |
| **JAMES SCHAEFFER-PATTON,** | ) | |
| **Defendant.** | ) | |

Submitted: January 18, 2023
Decided: February 17, 2023

## <u>ORDER</u>

*Upon Defendant's Motion for a New Trial –* **DENIED.**

This 16th day of February, 2023, having considered Defendant's Motion for a New Trial, the State's Response, oral arguments of counsel and the record in this matter; it appears to the Court that:

1. Defendant James Schaeffer-Patton (hereinafter "Defendant") was indicted on March 3, 2020, via Superior Court Criminal Rule 9, and charged with two counts of Abuse of a Corpse in violation of Title 11, Section 1332 of the Delaware Code.[1]

---

[1] *See* Indictment, *State v. James Schaeffer-Patton*, ID No. 2002011676 (Del. Super. Ct. Mar. 3, 2020) (D.I. 1).

2.  Pre-Trial, Defendant filed a Motion to Dismiss the Indictment, arguing that 11 Del. C. § 1332 was unconstitutionally vague.[2]  This motion was fully heard and denied the motion on May 19, 2022, and the case proceeded to trial on November 1, 2022.[3]

3.  Following a three-day jury trial, Defendant was found guilty of both counts of Abuse of a Corpse.  Before the case was submitted to the jury, Defendant moved for a mistrial, claiming that a statement of the Prosecutor in its closing argument, improperly appealed to the jury's sympathy.  Specifically, the Prosecutor stated:

> It's up to you.  It's a difficult job, and the people who had their bodies removed and those families deserve to have that job done correctly, they deserve to have it done right and they deserve peace of mind and know that it will be done right in the future. The job wasn't done correctly.  He knew how to do the job correctly, he just didn't.[4]

4.  This motion was denied, without prejudice, with leave to file a Motion for a New Trial after the defense had opportunity for full review of the transcript.

5.  The instant motion was filed on November 14, 2022, and now challenges not only the above comment of the Prosecutor in rebuttal summation, but two additional statements made in closing arguments which Defendant alleges

---

[2]  D.I. 29.
[3]  *State v. Schaeffer-Patton*, 2022 WL 1597623, at *4 (Del. Super. Ct. May 19, 2022).
[4]  Trial Tr., Nov. 2, 2022, at 132.

misstated the evidence. Defendant additionally raises a new challenge to the Indictment, stating that an essential element was missing from the charge and as a result, the Indictment should be dismissed.[5] The State replied in opposition[6] and oral argument was held on the motion.[7]

6. The Court will briefly recount here just the evidence presented which is relevant to this motion. Defendant worked as a forensic investigator for the Delaware Division of Forensic Science (hereinafter "DDFS") and this case arises from two incidents, occurring on January 31, 2018, and July 5, 2019, where Defendant was tasked with removing a body from the scene of a police investigation.

7. On January 31, 2018, Defendant reported to the scene of a hanging. Law enforcement officers witnessed Defendant drag the decedent's body by a cord around the decedent's neck. Roughly a year and a half later, on July 5, 2019, Defendant arrived at the scene of a drug overdose death, located on the third floor of an apartment building. Police reported that Defendant's removal of the body caused the decedent's head to hit multiple stairs on the way out of the building. An investigation into the incidents ensued, and on March 2, 2020, Defendant was indicted and charged with two counts of abuse of a corpse.

---

[5]      D.I. 43.
[6]      D.I. 44.
[7]      D.I. 48.

8.     At trial, the State called multiple police officers who witnessed Defendant remove bodies at the January 2018 and July 2019 incidents.  The State also called Julia Vekasy-Quillin, Defendant's supervisor at the time, who provided testimony regarding the Defendant's demeanor on the job and internal disciplinary actions imposed against Defendant.  Though Defendant admitted to carrying a body by the ligature around one decedent's neck and causing another decedent's head to hit stairs during removal, his testimony attempted to minimize the severity of both incidents.  Defendant admitted his actions were not proper.

9.     During opening summation, the Prosecutor stated "[t]he defendant dragged one person down the stairs so that their head hit each, every stair on the way down."[8]  The Prosecutor went on to state "Miss Vekasy-Quillin testified she wanted to escalate [Defendant's internal disciplinary action] but she was told no, it's done, it's over."[9]  Neither of these statements, to which Defendant now complains is misconduct, were objected to at trial.

10.     Under Superior Court Criminal Rule 33, the Court may grant a new trial "if required in the interest of justice."[10]  "A new trial is appropriate 'only if the error complained of resulted in actual prejudice or so infringed upon defendant's

---

[8]     Trial Tr., Nov. 2, 2022, at 127.
[9]     *Id.* at 130.
[10]    Super. Ct. Crim. R. 33.

fundamental right to a fair trial as to raise a presumption of prejudice.'"[11] This Court has broad discretion in determining whether to grant a new trial in the interest of justice.[12]

11.   As stated above, Defendant now moves for a new trial based in part on the collective effect of all three alleged improper statements by the Prosecutor, and on the basis that the Indictment is devoid of the language, "except as authorized by law," which Defendant argues is a necessary element of the crime.

## MISCONDUCT CLAIMS

12.   In reviewing a claim of prosecutorial misconduct, the Court's standard of review depends on whether a timely objection was raised at trial.[13]  If a timely and pertinent objection to prosecutorial misconduct was raised at trial, or if the trial judge intervened and considered the issue *sua sponte*, the review is one for 'harmless error.   If there was no objection at trial, or the trial judge did not intervene *sua sponte*, the review is for plain error.[14]

13.   Defendant made a timely objection to only one instance of alleged prosecutorial misconduct—the State's allegedly improper appeal to the jury's

[11]   *State v. Bailey*, 2020 WL 1316838, at *2 (Del. Super. Ct. Mar. 16, 2020) (quoting *State v. Johnson*, 2018 WL 3725748, at *2 (Del. Super. Ct. July 25, 2018)).
[12]   *State v. Appiah*, 2019 WL 6647806, at *3 (Del. Super. Ct. Nov. 26, 2019) (citing *Johnson*, 2018 WL 3725748, at *2).
[13]   *State v. Matthews*, 2018 WL 6498694, at *4 (Del. Super. Ct. Dec. 10, 2018).
[14]   *Baker v. State*, 906 A.2d 139, 148 (Del. 2006) (citing *Kurzmann v. State*, 903 A.2d 702, 709 (Del. 2006)).

sympathy. Accordingly, the Court will review this objection under the harmless error standard.

14. Under harmless error review, the Court engages in a three-step analysis to determine whether the alleged prosecutorial misconduct warrants a new trial. The first step requires the Court to determine whether the prosecutor's conduct was improper.[15] If no misconduct occurred, the analysis ends.[16] "However, if the Court determines that prosecutorial misconduct occurred, then the next inquiry is whether the misconduct prejudicially affected the defendant."[17] To make this determination, the Court applies the three-factor test set forth in *Hughes v. State*:[18] "(1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error."[19] "The factors in the *Hughes* test are not conjunctive and do not have the same impact in every case; for example, one factor may outweigh the other two. Moreover, we apply the test itself in a contextual, case-by-case, and fact sensitive manner."[20]

15. If the prosecutorial misconduct is found to be prejudicial under *Hughes*, the misconduct warrants reversal, and the analysis ends.[21] "If the conduct is found

---

[15] *Baker*, 906 A.2d at 148.
[16] *Id.*
[17] *Appiah*, 2019 WL 6647806, at *3 (citing *Kirkley v. State*, 41 A.3d 372, 376 (Del. 2012)).
[18] 437 A.2d 559 (Del. 1981).
[19] *Kirkley*, 41 A.3d at 376 (citing *Baker*, 906 A.2d at 149).
[20] *Baker*, 906 A.2d at 149.
[21] *Kirkley*, 41 A.3d at 376.

not to have prejudiced the defendant under the *Hughes* test, Delaware Courts must apply the *Hunter* test which considers 'whether the prosecutor's statements are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process.'"[22]

### A. PROSECUTOR'S COMMENT DID NOT IMPROPERLY APPEAL TO SYMPATHY

16.    Defendant contends that the statements referencing the decedent and their family made in rebuttal summation were improper because they: (1) invited the jury to consider the "peace of mind" of the decedents' families; and (2) suggested that a conviction would help ensure that the job of a forensic expert "will be done right in the future."[23]  In its response, the State contends that it "did not reference the specific family members of the decedents…nor imply that they were aware of the treatment of the bodies of their family members"[24] and at argument pointed out that the statement should not be looked at in a vacuum, but read in context where the proper standard was referenced immediately prior to and following the statement at issue.

17.    In reviewing this statement in the proper context, this statement – while inartful and unfortunate – does not rise to the level of misconduct. Referencing the

---

[22]    *State v. Spence*, 2014 WL 2089506, at *4 (Del. Super. Ct. May 15, 2014) (hereinafter "*Spence I*") (quoting *Hunter v. State*, 815 A.2d 730, 733 (Del. 2002)).
[23]    Def.'s Mot. New Trial ¶ 7, n.1.
[24]    State's Resp. ¶ 12, Nov. 18, 2022.

peace of mind of the decedents' family is not relevant to the State's burden of proof and therefore serves no legitimate purpose. As the Delaware Supreme Court previously held "[a] juror's goal is to determine the guilt or innocence of the particular defendant on trial."[25]

18. That said, these statements cannot be read in a vacuum. Read in context, immediately prior to the challenged comment, the State referenced the standard the jury had before it:

> At the end of this … you get to decide whether these actions would offend ordinary family sensibilities. I would ask you to consider what the ordinary family, if they heard about this happening, would feel about that, would that offend their sensibilities. And I would ask you when you think about what a reasonable person knows or would not know, would a reasonable person know that treating a body in that manner is offensive.[26]

Immediately following the above, the challenged statement was made, and then immediately afterwards, the Prosecutor continued: "If you find that he knows that it would outrage ordinary family sensibilities, then we would ask you to find him guilty of these two charges."[27]

19. Simply because the statement was inartful and unnecessary, does not automatically mean that it rises to the level of misconduct warranting further

---

[25] *Williamson v. State*, 707 A.2d 767, 1998 WL 138697, at *3 (Del. Feb.25, 1998) (TABLE).
[26] Nov. 2, 2022, Trial Transcript, page 132.
[27] *Id.*

analysis. The summation given by the Prosecutor properly referenced the standard multiple times and this statement did not mislead the jury or improperly appeal to the sympathy of the jury. At no point was it argued that a conviction would guarantee peace of mind for the decedent's family or that there was a fear this would occur in the future. In fact, it was uncontested that Defendant is no longer with DDFS and is currently employed in an entirely different capacity in another state. Therefore, the statement here does not rise to the level of misconduct and does not warrant a grant of a new trial.

B.    THE SOLE MISSTATEMENT OF THE EVIDENCE IN CLOSING DID NOT UNFAIRLY PREJUDICE DEFENDANT

20.    As noted above, Defendant now argues that two additional comments made by the Prosecutor during closing arguments were improper. The first of which was the Prosecutor's statement in opening summation that the July 5, 2019, decedent's head hit "each and every step on the way down" when Defendant carried out the body; the second was the statement regarding Defendant's supervisor at the DDFS, Ms. Vekasy-Quillin, having had wanted further punishment of Defendant at work, but was told no. Defendant argues that both statements are an improper mischaracterization of the evidence. In response, the State argues that both comments were a reasonable inference from the facts. With respect to the second comment, however, the State – without the benefit of the transcript – recognized that

the testimony may, in fact, prove this statement incorrect, but nonetheless does not warrant a new trial.

21.     Untimely allegations of prosecutorial misconduct are reviewed for plain error.[28] Under this standard of review, a three-step analysis occurs. Like under harmless error review, the Court must first determine whether prosecutorial misconduct occurred.[29] If no such misconduct occurred, the analysis ends.[30] If misconduct is found, however, the second step in the analysis is guided by the standard set forth in *Wainwright v. State*.[31] "Under *Wainwright*, '[t]he error complained of must be so clearly prejudicial to substantial rights [of the defendant] as to jeopardize the fairness and integrity of the trial process.'"[32] The doctrine of plain error is limited to "material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[33]

22.     With respect to the comment regarding one decedent's head hitting each and every stair, no misconduct occurred. This statement is a proper argument,

28      *Spence II*, 129 A.3d at 226.
29      *Id.*
30      *Id.*
31      504 A.2d 1096 (Del. 1986).
32      *State v. Kent*, 2019 WL 4723823, at *8 (Del. Super. Ct. Sept. 25, 2019) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).
33      *Spence I*, 2014 WL 2089506, at *8 (quoting *Wainwright*, 504 A.2d at 1100).

as it is a reasonable inference from the facts borne out at trial. At trial, Detective Ron Philips testified that as Defendant carried this decedent down the stairs, he heard and saw the "deceased victim's head bouncing off every step on the way down."[34] Officer Lytwnec, who was assisting Defendant by holding the feet of the body, testified that "the back of the head of [the] decedent hit several steps on the way down."[35] During closings, a prosecutor may do more than reiterate evidence adduced at trial.[36] The State is afforded a "certain latitude to discuss the evidence, the reasonable inferences therefrom, and the appropriate law and its application to the evidence."[37] No further analysis is needed with respect to this comment, as it is proper and cannot form the basis of a finding of unfair prejudice which deprived Defendant of a fair trial.

23. With respect to the statement of Ms. Vekasy-Quillen, the transcript shows that she did not wish for more punishment for Defendant. In fact, she testified to the opposite. At trial, Vekasy-Quillin testified that she supervised Defendant from early 2017 to 2019.[38] Following the January 2018 incident, Vekasy-Quillin stated that she wanted to provide the Defendant with a verbal warning but was overruled.[39] Instead, DDFS escalated the punishment and Defendant received a written

---

[34] Trial Tr., Nov. 1, 2022, at 100.
[35] *Id.* at 115 - 116.
[36] *Hughes*, 437 A.2d at 567.
[37] *Trala*, 244 A.3d at 1001 (citing *Hooks*, 416 A.2d at 203).
[38] Trial Tr., Nov. 1, 2022, at 152.
[39] *Id.* at 162:5-18.

warning.[40]   As a result, the comment: "Miss Vekasy-Quillin testified she wanted to escalate [Defendant's punishment] but she was told no, it's done, it's over"[41] was a misrepresentation of the witness testimony and thus improper.

24.   That said, this mischaracterization does not rise to the level of plain error under *Wainwright*.   In order to make such a finding, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process"[42] and have "affected the outcome of the trial."[43]

25.   That did not occur here.   Whether or not Vekasy-Quillin wished to escalate or was satisfied with Defendant's punishment is not prejudicial and is certainly not relevant to whether the Defendant's conduct violated the criminal statute.  Furthermore, the jury was specifically instructed that it is their recollection of the testimony that controls and that they are the fact finders, as what the attorneys say is not evidence.  Viewing the evidence in its totality, this mischaracterization of this testimony did not clearly prejudice a substantial right of the Defendant nor did it affect the outcome of trial.  And once again, no pattern of misconduct has been alleged or shown by Defendant, to trigger a new trial under *Hunter*.  Accordingly,

---

[40]   *Id.*
[41]   Trial Tr., Nov. 2, 2022, at 130.
[42]   *Spence II*, 129 A.3d at 229 (quoting *Wainwright*, 504 A.2d at 1100).
[43]   *Morales v. State*, 133 A.3d 527, 532 (Del. 2016) (quoting *Keyser v. State*, 893 A.2d 956, 959 (Del. 2006)).

the improper statement does not satisfy the *Wainwright* standard and does not warrant granting a new trial.

26.     Defendant additionally argued that the totality of the misconduct warrants a new trial.  Under this argument, the analysis is limited to the Vekasy-Quillen comment, as the previous two were not improper.  Therefore, no further analysis is required.  Defendant has not demonstrated that this error resulted in actual prejudice or so infringed on his fundamental right to a fair trial.  Therefore, Defendant has not shown it is in the interest of justice to require a new trial based on this statements.

## THE INDICTMENT SUFFICIENTLY STATED THE ELEMENTS OF ABUSE OF A CORPSE

27.     Under 11 *Del. C.* 1332, "[a] person is guilty of abusing a corpse when, *except as authorized by law*, the person treats a corpse in a way that a reasonable person knows would outrage ordinary family sensibilities."[44]  By failing to include the "except as authorized by law" language, Defendant contends that the indictment lacked an essential element of the crime and thus, failed to state an offense, which forms the basis of his final argument in support of his motion for a new trial.[45]  The

---

[44]     11 *Del. C.* § 1332 (emphasis added).
[45]     Def.'s Mot. New Trial ¶¶ 11-14.  This objection to the indictment is being raised for the first time in this motion, despite the fact that Defendant previously challenged the indictment in the aforementioned motion to dismiss on other grounds.  Additionally, just prior to the jury being instructed, Defendant successfully requested that this language be added to the definition of 11 Del. C. 1332, but made no motion at that time.  Nonetheless,

State argues that this phrase is not an essential element, but is a defense or an exception to criminal liability under this statute, and even if it is an essential element, Defendant was sufficiently put on notice of the charged offenses and is not entitled to a new trial as a result.

28.     The indictment performs two key functions: "to put the accused on full notice of what he is called upon to defend, and to effectively preclude subsequent prosecution for the same offense."[46]    "In determining the sufficiency of an indictment, the Court should consider whether the indictment informs the defendant of the charge with sufficient particularity to permit [him] to prepare [his] defense properly."[47]    Claims of a defective indictment "will be unavailing unless the indictment cannot, by the most liberal construction, be said to have imparted notice to him."[48]

29.     The indictment at issue here provided sufficient notice and did not prejudice Defendant's right to a fair trial.  Consistent with previous rulings regarding the sufficiency of indictments, the indictment here cited the statute under which Defendant was charged and sufficiently put him on notice of the offense.  Defendant's argument that the "except as authorized by law" language is essential

---

under a liberal reading of Superior Court Criminal Rule 12(b)(2), this argument will not be deemed waived and will be fully addressed at this time.

[46]     *Malloy v. State*, 462 A.2d 1088, 1092 (Del. 1983).
[47]     *State v. McGuiness*, 2022 WL 1538488, at *2 (Del. Super. Ct. May 13, 2022).
[48]     *Malloy*, 462 A.2d at 1093.

is unavailing. This language is a defense to the crime, rather than an element of the offense.

30. The Delaware Supreme Court in *Malloy v. State*, addressed a situation such as this, where a defendant challenged the indictment for the first time post trial because it failed to include any language regarding the "intent to deliver the subject drugs."[49] In determining that the indictment provided sufficient notice, the *Malloy* Court noted that the defendant "expressed no surprise" that evidence at trial addressed the element of the intent to deliver.[50] In addition, the Court found that the indictment also contained the citation to the statute of the offense and thus provided sufficient notice which afforded the defendant the opportunity to prepare a defense.[51]

31. Following the reasoning in *Malloy*, *State v. Toth* declined to dismiss a conviction despite the necessary element of damages having been excluded from the indictment.[52] In *Toth*, the defendant was charged with arson in the second degree, but the indictment made no reference to whether the property at issue was damaged, a necessary element of the crime.[53] The *Toth* court, relying heavily on *Malloy*, determined that the technical defect in the indictment was "not enough to reverse Mr. Toth's conviction or give him an inadequate assistance of counsel claim."[54]

---

[49] *Malloy*, 462 A.2d at 1092.
[50] *Id.* at 1093.
[51] *Id.* at 1094.
[52] *Toth*, 793 A.2d at 419.
[53] *Id.* at 419-20.
[54] *Id.* at 420.

Once again, as is the case here, *Toth* noted that the indictment contained the citation to the statute in question and that no objection was raised before or during trial.[55]

32.     Following *Malloy* and *Toth*, the Court finds that the indictment here sufficiently put Defendant on notice of the claims against him. The indictment contained the proper citation to the Delaware code, where the omitted language could be found. At trial, multiple witnesses testified that Schaeffer-Patton was authorized to remove a body from the scene of a police investigation, but he did so in a manner the witnesses had never seen before.[56] Defendant did not express surprise or object to this testimony. Based on the factors discussed in *Malloy* and *Toth*, the Court finds that the indictment here provided Defendant with sufficient notice of the charges against him, even should it be deemed a necessary element. Which it is not.

33.     Accordingly, Defendant has not demonstrated that it is in the interest of justice for him to receive a new trial.

---

[55]     *Id.* at 421.
[56]     Trial Tr., Nov. 1, 2022, at 35, 46, 66, 70, 82, 97, 114, 116.

**IT IS HEREBY ORDERED,** that Defendant's Motion for New Trial is

**DENIED**.  This matter will proceed to sentencing as scheduled.

_____
Danielle J. Brennan, Judge

Original to Prothonotary

Cc:   David C. Skoranski, Esquire, Deputy Attorney General
Zoe Plerhoples, Esquire, Deputy Attorney General
Eugene J. Maurer, Esquire
Molly Dugan, Esquire