IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RODERICK MUMFORD, | § | |
| | § | |
| Defendant Below, | § | No. 269, 2022 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. S1608020942A |
| | § | |
| Appellee. | § | |

Submitted: May 12, 2023
Decided: June 22, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

### ORDER

(1)     The appellant, Roderick Mumford,[1] has appealed the Superior Court's denial of his motion for postconviction relief under Superior Court Criminal Rule 61. After careful consideration of the parties' briefs and the record, we affirm the Superior Court's judgment.

(2)     The record reflects that in late August 2016, police officers received a search warrant for a residence at 206 Houston Circle in Millsboro, Delaware. The affidavit submitted in support of the warrant application[2] stated that during the first two weeks of August 2016, a past proven reliable confidential informant (the

---

[1] The appellant is also known as Roderick Brown. We use the name Mumford in this appeal to correspond to the caption of the Superior Court criminal case.

[2] Appendix to Answering Brief at B15-29.

"confidential informant") told a member of the Delaware State Police Sussex County Drug Unit, Detective Callaway, that a man named "Roderick" was selling cocaine from unit 206 in Houston Acres and that Roderick often operated a black Honda Accord and a silver Grand Am. Detective Callaway presented the informant with a photograph of Mumford, and the informant positively identified Mumford as the person who was selling cocaine from 206 Houston Circle. Police established surveillance and observed Mumford operating a silver Grand Am and exiting the vehicle and entering 206 Houston Circle. The Grand Am was registered to Shawanda Knox; the confidential informant told police that Knox was Mumford's girlfriend.

(3) Also during the first two weeks of August 2016, Detective Callaway, acting undercover, contacted a person (the "unwitting informant") who was believed to be a drug distributor for Mumford. Detective Callaway provided the unwitting informant with cash, and police observed as the unwitting informant entered 206 Houston Circle and remained inside for a short period of time. The unwitting informant then exited the residence with Mumford, stood outside with him for a few minutes before Mumford returned to the apartment, and then returned to Detective Callaway and gave him cocaine.

(4) Detective Callaway later conducted another purchase of cocaine using the unwitting informant, during which Detective Callaway provided the unwitting

2

informant with cash and the unwitting informant again entered 206 Houston Circle and returned to Detective Callaway with cocaine. Moments before this transaction, police observed Mumford arriving in a black Honda Accord that was registered to Mumford. During this transaction, Detective Callaway also observed Mumford standing in the doorway of 206 Houston Circle.

(5) On August 26, 2016, police executed the search warrant at 206 Houston Circle and found cocaine, heroin, marijuana, digital scales, a cutting agent, and $1,644 in cash. They then sought a search warrant for 507 El Coleman Drive. In addition to stating the history leading to the search of 206 Houston Circle and the results of that search, the affidavit submitted in support of the warrant application[3] for 507 El Coleman Drive stated that in July 2015 a "concerned citizen" had informed police that Roderick Mumford was involved in large-scale cocaine distribution and that Mumford's girlfriend, Knox,[4] resided at 507 El Coleman Drive and was involved in the storage of Mumford's cocaine and the proceeds from its distribution. Police conducting surveillance in July 2015 observed Mumford traveling to 507 El Coleman Drive and observed Knox leaving 206 Houston Circle and traveling to 507 El Coleman Drive.

---

[3] *Id.* at B33-47.
[4] This affidavit identified Mumford's girlfriend as "Showanda Nocks." *Id.* at B40.

(6)     In the second half of August 2016, a past proven reliable "cooperating individual" told Detective Callaway that Mumford was a large-scale drug dealer, that Mumford sold cocaine from 206 Houston Circle but did not live there, and that Mumford used his girlfriend Knox's residence at 507 El Coleman Drive to store proceeds of his drug sales. When police executed the warrant at 206 Houston Circle, they arrested Mumford outside that residence, while he was sitting in the Honda. The warrant application for 507 El Coleman Drive stated that Mumford had several keys in his possession when he was arrested; police took the keys to 507 El Coleman, and one of the keys "accessed the residence."

(7)     Police executed the warrant at 507 El Coleman Drive and found, among other things, two guns and keys to two safe-deposit boxes. The keys were in a dresser drawer with Mumford's passport and birth certificate. Police then obtained and executed search warrants for the safe-deposit boxes, one of which Mumford jointly owned with Knox and the other of which he jointly owned with his mother. One of the safe-deposit boxes contained more than $70,000 in cash, and the other contained more than $30,000 in cash.

(8)     A Superior Court jury found Mumford guilty of money laundering, aggravated possession of cocaine (Tier V), drug dealing cocaine (Tier IV), drug dealing heroin, and two counts of possession of drug paraphernalia. The Superior Court merged the two cocaine-related charges for sentencing and sentenced

4

Mumford to a total of forty-two years of imprisonment, suspended after ten years for decreasing levels of supervision. Mumford appealed the denial of his motion for acquittal on the money-laundering charge, and this Court affirmed on appeal.[5]

(9) Mumford filed a *pro se* motion for postconviction relief, and the Superior Court appointed counsel to represent Mumford. Postconviction counsel filed a motion to withdraw, stating that she had concluded that were no meritorious grounds to advance in support of postconviction relief. Mumford responded with issues for the Superior Court's consideration, asserting various claims of ineffective assistance of counsel. Trial counsel filed an affidavit addressing Mumford's claims. Mumford requested appointment of an *amicus curiae* to address a question of law; the Superior Court denied that request but allowed Mumford more time to brief the issue that he wanted to raise. After receiving Mumford's additional argument, the Superior Court denied Mumford's motion for postconviction relief and granted postconviction counsel's motion to withdraw.[6] Mumford has appealed to this Court.

(10) On appeal, Mumford asserts that the Superior Court erred by denying his claims of ineffective assistance of counsel. Specifically, Mumford argues that

---

[5] *Mumford v. State*, 2018 WL 5096074 (Del. Oct. 17, 2018). This Court has also affirmed the Superior Court's denial of Mumford's motion for sentence modification, *Mumford v. State*, 2023 WL 1793844 (Del. Feb. 7, 2023), and has affirmed in part and reversed in part the Superior Court's ruling on Mumford's petitions for return of property that the State argued was subject to forfeiture under 16 *Del. C.* § 4784, *Brown v. State*, 214 A.3d 922 (Del. 2019).

[6] *State v. Mumford*, 2022 WL 2388396 (Del. Super. Ct. June 30, 2022).

his counsel was ineffective for (i) failing to file a pretrial motion seeking identification of the unwitting informant; (ii) failing to seek suppression of the evidence found at 507 El Coleman Drive and in the safe-deposit boxes; and (iii) failing to challenge the money-laundering indictment on the grounds that it was vague and ambiguous. Mumford also contends that the Superior Court erred by rejecting, without holding an evidentiary hearing on whether Mumford waived his *Miranda*[7] rights, Mumford's claim that trial counsel was ineffective for failing to object to the admission into evidence of certain statements that Mumford made during a police interview.[8]

(11) This Court reviews the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[9] We review legal or constitutional questions, including claims of ineffective assistance of counsel, *de novo*.[10] The Court considers the procedural requirements of Rule 61 before addressing any substantive issues.[11]

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[8] To the extent that Mumford raised additional claims in the Superior Court but not in his opening brief on appeal, those claims have been waived. *See* DEL. SUPR. CT. R. 14(b)(vi)(A)(3) ("The merits of any argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal.").

[9] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).

[10] *Id.*

[11] *Bradley v. State*, 135 A.3d 748, 756-57 (Del. 2016).

(12)  As the Superior Court correctly determined, Mumford's claims of ineffective assistance of counsel are not procedurally barred.[12]  In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (i) his defense counsel's representation fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[13] Although not insurmountable, there is a strong presumption that counsel's representation was professionally reasonable.[14]  A defendant must also make and substantiate concrete allegations of actual prejudice to prevail on an ineffective-assistance claim.[15]

(13)  Mumford's first claim on appeal is that his counsel provided ineffective assistance by failing to file a pretrial motion seeking identification of the unwitting informant.  The Superior Court held that this claim was without merit and that Mumford suffered no prejudice from trial counsel's failure to seek disclosure of the

---

[12] *See Green v. State*, 238 A.3d 160, 175 (Del. 2020) ("[I]neffective-assistance claims are not subject to Rule 61(i)(3)'s bar because they cannot be asserted in the proceedings leading to the judgment of conviction under the Superior Court's rules and this Court's precedent.").

[13] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

[14] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

[15] *Bradley*, 135 A.3d at 760; *see also Ploof*, 75 A.3d at 821 ("To establish prejudice, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (quoting *Strickland*, 466 U.S. at 694) (alteration in original)); *id.* ("'A reasonable probability is a probability sufficient to undermine confidence in the outcome'—a lower standard than 'more likely than not.'" (quoting *Strickland*, 466 U.S. at 693-94)).

identity of the unwitting informant, because any such motion would have been futile.[16] The Superior Court reasoned that the unwitting informant was used only to establish probable cause for the search warrants, and the informant's identity therefore was not subject to disclosure.[17]

(14) Delaware Rule of Evidence 509 provides that the State "has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law to a law-enforcement officer,"[18] subject to certain exceptions. As this Court stated in *Butcher v. State*, Rule 509(c)(2) "provides that where a defendant claims that an informer may be able to give testimony that could materially aid the defense, and the State claims the informer's identity is privileged, the trial judge must determine whether the informer can supply such testimony."[19] Delaware courts have identified four "standard situations"[20] in which the informant-identification issue arises: (i) the

---

[16] *Mumford*, 2022 WL 2388396, at *5-6.

[17] *Id.* (applying Delaware Rule of Evidence 509; *State v. Flowers*, 316 A.2d 564 (Del. Super. Ct. 1973); and *Butcher v. State*, 906 A.2d 798 (Del. 2006)). In his affidavit in response to Mumford's postconviction motion, trial counsel stated that he did not seek identification of the unwitting informant because the unwitting informant was not involved in the drug offenses with which Mumford was charged; rather, the police used the unwitting informant only to develop probable cause for the search warrants.

[18] DEL. R. EVID. 509(a).

[19] *Butcher*, 906 A.2d at 800; *see also Miller v. State*, 2017 WL 444843, at *4 (Del. Jan. 3, 2017) (stating that the State may refuse to disclose the identity of a confidential informant unless the "defendant can show, beyond mere speculation, that the confidential informant may be able to give testimony that would materially aid the defense" (internal quotation omitted)).

[20] *Flowers*, 316 A.2d at 567.

informant was used merely to establish probable cause for a search; (ii) the informant witnessed the criminal act; (iii) the informant participated in, but was not a party to, the illegal transaction; and (iv) the informant was an actual party to the illegal transaction.[21] "[W]hile the privilege is generally protected in the first situation and disclosure is usually required in the fourth situation, there is no general rule for the second and third situations—where the informer witnessed the criminal act or participated in the illegal transaction."[22]

(15) We agree with the Superior Court's determination that trial counsel's decision not to seek identification of the unwitting informant was professionally reasonable and that Mumford has not established prejudice. Mumford's convictions for aggravated possession and drug dealing arose from the quantities of drugs and other circumstantial evidence of drug dealing (such as more than $100,000 in cash) located during the searches, not from the drug transactions in which the unwitting informant participated. The unwitting informant was used merely to develop probable cause for the searches, and an informant's identity is "generally protected" in such circumstances.[23] Therefore, Mumford has not overcome the strong presumption that trial counsel's representation was professionally reasonable or

---

[21] *Butcher*, 906 A.2d at 802.

[22] *Id.* at 802-03 (citations omitted).

[23] *Id.* at 802.

established prejudice from counsel's failure to seek identification of the unwitting informant.

(16) Second, Mumford claims that counsel should have moved to suppress evidence found at 507 El Coleman Drive and in the safe-deposit boxes because (i) there was not probable cause to support the El Coleman warrant and (ii) the police conducted an illegal search when, without first obtaining a warrant, they tested the door of the residence with the key that Mumford had when he was arrested. In his affidavit in response to Mumford' postconviction motion, trial counsel stated that he did not file a motion to suppress the evidence seized from 507 El Coleman Drive because "it was counsel's opinion that sufficient probable cause existed for the issuance of a search warrant for the residence and that there was no basis for a meritorious suppression motion."[24] The Superior Court determined that Mumford did not establish prejudice as to this claim because Knox, who was also charged, unsuccessfully moved to suppress the El Coleman search warrant, arguing that the warrant lacked probable cause because the application did not establish a sufficient nexus between the El Coleman residence and Mumford's drug activities at the Houston Circle residence.[25] As to the testing of the key, the court observed that "[i]t seems that no Delaware court has directly addressed whether or not using or

---

[24] Appendix to Answering Brief at B148.
[25] *Mumford*, 2022 WL 2388396, at *6.

10

checking a key to determine if it fits a residential door constitutes an entry or search."[26] But the court determined that it did not need to resolve the issue in this case because the court had considered the use of the key in Knox's case and denied her motion to suppress, and Mumford therefore could not demonstrate prejudice.[27]

(17) We conclude that Mumford has not demonstrated ineffectiveness or prejudice under *Strickland* because the warrant application alleged sufficient facts from which an impartial judicial officer could reasonably conclude that drugs or evidence of illegal drug dealing would be found at 507 El Coleman Drive.[28] The warrant application alleged the background facts that had resulted in the search of 206 Houston Circle, including the directed drug purchases from Mumford at that address, and that police recovered drugs and drug-dealing paraphernalia during that search; stated that in July 2015 a "concerned citizen" had informed police that Mumford was involved in large-scale cocaine distribution and that Knox, Mumford's girlfriend, resided at 507 El Coleman Drive and was involved in the

---

[26] *Id.*

[27] *Id.*

[28] *See Dunnell v. State*, 2022 WL 188163 (Del. Jan. 20, 2022) (affirming Superior Court's determination that counsel's decision not to challenge search warrants was not objectively unreasonable because "in his professional opinion the affidavits in support of those warrants did support a finding of probable cause"). We do not conclude that Mumford could not show prejudice merely because Knox argued that the El Coleman warrant lacked probable cause and lost on that issue in the Superior Court. If the warrant were not supported by probable cause, then counsel's failure to seek suppression on that basis, and therefore preserve the argument for appeal in Mumford's case, might constitute prejudice under *Strickland*, regardless of the outcome of a co-defendant's similar motion that was not appealed.

storage of Mumford's cocaine; indicated that police surveillance in July 2015 observed Mumford traveling to 507 El Coleman Drive and observed Knox traveling between the Houston Circle and El Coleman Drive residences; and alleged that in the second half of August 2016, a past proven reliable "cooperating individual" told police that Mumford was a large-scale drug dealer, that Mumford sold cocaine from 206 Houston Circle but did not live there, and that Mumford used his girlfriend Knox's residence at 507 El Coleman Drive to store proceeds of his drug sales. The warrant application reflected that police work in August 2016—and the search at Houston Circle—had corroborated the information received from the concerned citizen in July 2015 and from the past proven reliable cooperating individual in August 2016 concerning the nexus between 507 El Coleman Drive and drug activity; it therefore supported a finding of probable cause to search that residence.[29] Moreover, because the information in the affidavit was sufficient to support a finding of probable cause without regard to the allegation that a key that Mumford possessed

---

[29] *See Le Grande v. State*, 947 A.2d 1103, 1108 (Del. 2008) ("If an informant's tip is sufficiently corroborated by independent police work, the tip may form the basis for probable cause even though nothing is known about the informant's credibility."); *Gardner v. State*, 567 A.2d 404, 409-10 (Del. 1989) ("When viewed from a totality of the circumstances perspective, the search warrant affidavit clearly contained, within its 'four corners,' information from which one could conclude that it was more than merely probable that Gardner had been engaged in drug transactions at his residence and that drugs were likely to be on the premises on October 10, 1986. The affidavit recites a two-year history of drug dealing at the Gardner residence, including evidence of a direct controlled buy and various reports from police officers and anonymous sources. Although the most recent report of drug activity at the residence . . . occurred in December, 1985, Gardner continued to occupy the residence in the interim and by September of 1986, Levy, then an informant, had confirmed the continuance of drug dealing.").

when he was arrested fit the door at 507 El Coleman Drive, we need not decide whether police conducted an illegal search when they tested the key.[30]

(18) Third, Mumford contends that his counsel should have sought to dismiss the money-laundering charge on the grounds that the indictment was vague and ambiguous as to that charge. In his affidavit in response to Mumford's motion for postconviction relief, trial counsel stated that there was no basis to seek dismissal of the indictment because it sufficiently alleged that Mumford acquired or maintained an interest in the proceeds of a criminal activity on or about August 26, 2016.[31] The Superior Court concluded that the money-laundering charge in the indictment, which tracked the language of the money-laundering statute, was sufficiently specific to put Mumford on notice of the charge against him and to effectively preclude subsequent prosecution for the same offense.[32] We agree with

---

[30] *See Jones v. State*, 28 A.3d 1046, 1057 (Del. 2011) (explaining that when the probable-cause affidavit contains information derived from an illegal seizure, the reviewing court must "excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue the warrant" (internal quotations and alteration omitted)).

[31] Appendix to Answering Brief at B149-50.

[32] *Mumford*, 2022 WL 2388396, at *8; *see also Malloy v. State*, 462 A.2d 1088, 1092-93 (Del. 1983) (stating that the two functions of an indictment—"to put the accused on full notice of what he is called upon to defend, and to effectively preclude subsequent prosecution for the same offense"—are fulfilled if the indictment "contains a plain statement of the elements or essential facts of the crime" and rejecting post-trial challenge to indictment where the introduction to the indictment "contained the official citation to the statute and the name of the offense," defendant pleaded not guilty to the indictment "and thus declared that he and his attorney had read the indictment and understood the nature of the accusations against him," and the defendant "expressed no surprise at trial that the State's evidence was directed to the crime of possession with intent to deliver hashish"); *Allison v. State*, 2016 WL 5462439 (Del. Sept. 28, 2016) ("An information is adequate if it is 'a plain, concise and definite written statement of the essential facts

13

the Superior Court's conclusion. Moreover, if trial counsel had challenged the indictment and the court had concluded that the indictment was insufficiently specific, the court likely would have ordered the State to amend the indictment or to provide Mumford with a bill of particulars, which would not have changed the result of the proceeding.[33] For these reasons, Mumford has not established ineffectiveness or prejudice.

(19) Finally, Mumford claims that the Superior Court erred by rejecting, without holding an evidentiary hearing on whether Mumford waived his *Miranda*[34] rights, Mumford's claim that trial counsel was ineffective for failing to object to the admission into evidence of certain statements that Mumford made during a police interview. Mumford initially argued that trial counsel was ineffective for failing to hire a drug-addiction expert to counter the State's theory that he was dealing drugs. After trial counsel and the State responded that hiring such an expert would have been futile because Mumford admitted during the police interview that he was dealing drugs, Mumford asserted that counsel should have objected to the admission of his statements on the basis that he did not waive his *Miranda* rights.

---

constituting the offense charged.' Generally it is sufficient that an information follow the language of the statute." (quoting *Malloy*)).

[33] *See* DEL. SUPER. CT. R. CRIM. PROC. 7(e) (authorizing court to permit amendment of indictment at any time before verdict "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced"); *id.* R. 7(f) (authorizing court to direct the filing of a bill of particulars).

[34] *Miranda v. Arizona*, 384 U.S. 436 (1966).

14

(20)  The Superior Court reviewed the transcript of the police interview, which reflects that the officer conducting the interview read Mumford his *Miranda* rights and then asked Mumford if he understood each of those rights and whether, having those rights in mind, Mumford wanted to talk to him.[35]  Mumford responded by asking "[w]hat do you want to talk about" and then engaged in conversation with the interviewing officer.  The Superior Court concluded that it was "unclear from the transcript if Mumford gave an express waiver such as . . . nodding his head or some other non-verbal cue."[36]  But after reviewing the law applicable to implied waiver, the court determined that the transcript reflected that "there was at least an implied waiver."[37]  The court stated:

> Mumford was read his *Miranda* warnings and, subsequently, responded to police questioning.  Mumford does not contend that the officers intimidated, coerced, or deceived him into waiving his rights, and this Court finds that no such evidence exists in the record.  Mumford was forty-five at the time of the interview, and familiar with the criminal justice system.  Mumford does not argue that he did not understand his rights, just that counsel was ineffective for not challenging the interview.  There is no evidence of an uncoerced choice and, throughout the interview, Mumford possessed the requisite level of comprehension for this Court to conclude that his *Miranda* rights had been waived.
>
> The State presented an expert who testified that the amount of cocaine found by police was "a lot more" than a typical cocaine user would possess.  With Mumford's own admission, the statements of the State's experts, and the amount of illegal drugs and cash found in Mumford's possession, the deck is heavily stacked against Mumford.  Great weight

---

[35] *Mumford*, 2022 WL 2388396, at *9.

[36] *Id.*

[37] *Id.* at *9-10.

15

and deference are given to the tactical decisions of trial counsel. Here, Trial Counsel determined that a drug addiction expert could not explain away the evidence of drug dealing presented by the State.

Mumford's claim regarding Trial Counsel's failure to hire an addiction expert to counter the State's theory of drug dealing fails to show ineffective assistance of counsel.[38]

(21) We find no reversible error in the Superior Court's determination, without holding an evidentiary hearing, that there was an implied waiver.[39] The court reviewed the transcript of the police interview to decide the waiver issue. Mumford does not identify additional information that he could have developed at a hearing that would have changed the court's ruling on that issue. Contrary to his assertion that "[t]here is nothing in the record as to the knowledge that Mumford has concerning the criminal justice system, nor his education or criminal record to support the trial court's conclusion," the transcript of the police interview alone includes numerous references to Mumford's prior police interactions, charges, and time in prison, and the trial court record otherwise contains information relating to at least two prior drug-related convictions, in 1996 and 2003. The Superior Court acted within its discretion when it decided the *Miranda*-waiver issue without holding

---

[38] *Id.* at *10.

[39] *See, e.g.*, *Garvey v. State*, 873 A.2d 291 (Del. 2005) (affirming denial of motion to suppress based on purported ambiguous *Miranda* waiver, where defendant said "depends on what you ask me" after investigator advised the defendant of his *Miranda* rights and then asked, "understanding those rights are you willing to give a statement if I ask you certain questions?").

16

an evidentiary hearing.[40]  Moreover, Mumford has not shown prejudice because, even without Mumford's statements,[41] "a drug addiction expert could not explain away the evidence of drug dealing presented by the State."[42]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:


*/s/ Karen L. Valihura*
Justice

---

[40] *See George v. State*, 2015 WL 1000228, at *4 (Del. Mar. 6, 2015) (recognizing the Superior Court's broad discretion under Superior Court Criminal Rule 61(h)(1) to decide whether an evidentiary hearing on a postconviction motion is necessary).

[41] The thrust of Mumford's statements during the police interview was that he did not deal or sell drugs, but rather that he was a user who got together with friends to get high, and the friends would give him money for the drugs that they consumed together.  And although he admitted being present at 206 Houston Circle, he denied recent use of 507 El Coleman Drive and disclaimed control of any contraband found there.

[42] *Mumford*, 2022 WL 2388396, at *10; *see also Andrus v. State*, 2004 WL 691922, at *2 (Del. Mar. 12, 2004) (holding that counsel's deficient failure to seek suppression of defendant's statements to police on Sixth Amendment grounds did not prejudice the defendant under *Strickland* because "[e]ven if the statements had been suppressed, the other evidence of Andrus' guilt was overwhelming").  The Superior Court observed that "Mumford requested to make a phone call at several points during [the police] interview," including specifically asking "when do I get a phone call so I can call my lawyer or try to make bond?"  *Mumford*, 2022 WL 2388396, at *9.  "Under the Delaware Constitution, unlike its federal counterpart, if a suspect attempts to invoke [his] *Miranda* rights during an interrogation, but does not do so unequivocally, the police must clarify the suspect's intention before continuing with the interrogation."  *Garvey*, 873 A.2d at 296 (internal quotations omitted); *cf. also Holmes v. State*, 2016 WL 1055050, at *4-5 (Del. Mar. 14, 2016) (noting that the police attempted to clarify the defendant's intentions as to waiver of *Miranda* rights after the defendant equivocally invoked his right to an attorney by saying "I think I'm gonna need a lawyer or something man").  But we need not consider whether Mumford's requests to contact his lawyer constituted an invocation of his rights, or whether the police responded as required under the Delaware Constitution, because of our determination that, even without Mumford's statements, the evidence of drug dealing was sufficient.